Bryan H. STEEL, Bobby Steel and
Ruby Steel, Appellants,

v.

Cody WHEELER, Appellee.

No. 12–97–00364–CV.

Court of Appeals of Texas,
Tyler.

April 30, 1999.

Rehearing Overruled June 8, 1999.

William R. Pemberton, Crockett, for appellant.

Herman E. Bate, Lufkin, for appellee.

Panel consisted of RAMEY, Jr., C.J., HADDEN, J., and WORTHEN, J.

JIM WORTHEN, Justice.

In this property dispute, Cody Wheeler ("Wheeler") claimed the right to use a road bordered by Bryan, Bobby and Ruby Steel's ("the Steels") land under an implied dedication for public use. After a jury trial, the court granted Wheeler judgment for an implied dedication of the roadway in question and $14,800.00 in attorneys' fees. The Steels have appealed and raised four issues for our review. We will affirm.

Wheeler purchased a 192–acre tract of land in 1993. His only access to his land was via a strip of land known as the Upper Centralia Road.[1] The Steels owned two tracts of land which bordered the road at issue in this case. For two years after the purchase of the 192–acre tract, Wheeler used the Upper Centralia Road, without incident, for ingress and egress purposes. In 1995 and without notice, the Steels placed roadblocks, including the installation of a locked gate, to prevent Wheeler's ingress and egress to his 192–acre tract. Wheeler filed a petition for a declaratory judgment to determine his right to use the Upper Centralia Road for ingress and egress purposes and also to recover his attorneys' fees. Wheeler claimed that the Upper Centralia Road was dedicated to public use. The case was tried before a jury, which found that the strip of land known as the Upper Centralia Road had been impliedly dedicated to public use prior to August 31, 1981. It further determined that the Upper Centralia had never been abandoned as a public road. Additionally, the jury awarded Wheeler $14,800.00 in attorneys' fees pursuant to the

---

1. The Upper Centralia Road, also referred to in trial testimony as the Centralia Road and the Arbor Road, is the roadway in controversy. It begins at an intersection of the former Crockett–Kennard Road on the south boundary line of Wheeler's 192–acre tract. The road once ran to Centralia in Trinity County.

Declaratory Judgment Act. Judgment was rendered by the trial court in support of those findings.

■ We will first address issues two and three. In their second issue, the Steels complain that the trial court abused its discretion when it refused to instruct the jury that under Wheeler's theory of implied dedication of the Upper Centralia Road, it must be shown that the dedicating owner held a fee simple title to the land comprising the road. The third issue relates to the second, alleging that a jury question should have been submitted with fee simple title as an element of implied dedication. We will, therefore, address these two issues together. The first question submitted to the jury along with its accompanying instruction was:

### Question No. 1

Was the strip of land in question impliedly dedicated to public use prior to August 31, 1981?[2]

You are instructed that an "Implied Dedication" occurs when (1) the acts of the landowner induced the belief that the landowner intended to dedicate the road to public use; (2) the landowner was competent to do so; (3) the public relied on these acts and will be served by the dedication; and (4) there was an offer and acceptance of the dedication.

Answer: 'Yes' or 'No'

Answer: Yes

■ Dedication occurs when a landowner sets apart his land for public use. *Fazzino v. Guido*, 836 S.W.2d 271, 274 (Tex.App.—Houston [1st Dist.] 1992, writ denied); *Ford v. Moren*, 592 S.W.2d 385, 390 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.). Dedication can occur either

expressly or impliedly. *Viscardi v. Pajestka*, 576 S.W.2d 16, 19 (Tex.1978). Whether a road has been dedicated for public use is a question of fact. *Broussard v. Jablecki*, 792 S.W.2d 535, 537 (Tex.App.—Houston [1st Dist.] 1990, no writ).

The evidence at trial established that the road at issue had been identified in a number of deeds as early as 1908. Several witnesses testified that they and the public had used the road from their earliest memories. Charles Hallmark ("Hallmark"), one of the owners of the 192–acre tract prior to 1993, testified that he first remembered using the road as a five-year-old boy back in 1936, and that it was a road used by the general public. Katy Thompson, who first moved to Houston County in 1932, remembered using the road at that time. Seventy-eight-year-old Marcia Garrett, who was born in 1919, remembered walking on the road to school as a child. She further recalled that her family drove their wagon on it. Dave Rains remembered that the road was there in 1934, when he moved to the area as a ten-year-old boy. The evidence at trial clearly showed that the Upper Centralia Road had been used by the public as far back as 1932, with its exact origins being unknown. There was no evidence that anyone had objected to the use of the road until the Steels erected the roadblocks in 1995.

■ The Steels correctly assert the general rule that in cases regarding implied dedication, an owner's donative intent may not be inferred from evidence that shows only that the public used the roadway for a long time without objection from the owner. *Barstow v. State*, 742 S.W.2d 495, 506 (Tex.App.—Austin 1987, writ denied). The Steels have failed to take into account, however, the corollary to the gen-

2. In this case, the question submitted by the trial court to the jury limited the date of the dedication to pre-August 31, 1981. This was before the common law dedication of roadways was abolished in Texas by the legislature and the predecessor statute to sections 281.001 and 281.003 of the Texas Transportation Code. Act of May 27, 1989, 69th Leg. ch.

509, 1985 Tex. Gen. Law, 2009. The Supreme Court of Texas has held that dedications before the doctrine was abolished in Texas are valid. *Lindner v. Hill*, 691 S.W.2d 590, 592 (Tex.1985); *Graff v. Whittle*, 947 S.W.2d 629, 635 (Tex.App.—Texarkana 1997, writ denied).

eral rule, which states that evidence of long and continued use by the public raises a presumption of dedication by the owner when the origin of the land use and the ownership of the land at the time it originated cannot be shown, one way or the other, due to the lapse of time. *Id.* at 507. For this corollary to apply, the origin of the public use and the ownership at the time must be "shrouded in obscurity, and no proof can be adduced showing the intention of the owner and allowing the use." *Dunn v. Deussen,* 268 S.W.2d 266, 269 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n.r.e.).

Based upon the evidence presented at trial, we hold that this presumption applies to the present case. All of the witnesses who testified said that the road was used by the public as far back as they could remember. None of the witnesses could testify as to who owned the property when the public use of the Upper Centralia Road began, much less what the owner's intention was. It is clear that the origin of the use of the Upper Centralia Road cannot be shown due to the lapse of time. Consequently, the trial court did not err in failing to submit a jury question or element on the issue of fee simple ownership. The jury's verdict that an implied dedication of the Upper Centralia Road had occurred prior to August 31, 1981, is sustainable. We overrule issues two and three.

The Steels complain in their first issue that the trial court committed error when it refused to submit their requested issue on statutory abandonment of the Upper Centralia Road. Statutory abandonment is defined in § 251.057 of the Texas Transportation Code, which states:

### § 251.057. Abandonment of County Road

(a) A county road is abandoned when its use has become so infrequent that one or more adjoining property owners have enclosed the road with a fence continuously for at least 20 years. The abandoned road may be reestablished as a public road only in the manner provided for establishing a new road.

(b) This section does not apply to:

(1) a road to a cemetery; or

(2) an access road that is reasonably necessary to reach adjoining real property.

Tex. Transp. Code Ann. § 251.057 (Vernon 1995).

The second question submitted to the jury, along with its accompanying instruction, presented the issue of common law abandonment, as follows:

### Question No. 2

Has the strip of land in question been abandoned as a public road?

Answer 'Yes' or 'No'

Answer: No

A roadway has been abandoned whenever the use for which it was dedicated becomes impossible, or so highly improbable as to be practically impossible, or where the object for the use which it was dedicated wholly fails. Mere nonuse does not ordinarily constitute abandonment. The elements of common law abandonment of a road by the public are acts of relinquishment and intention to abandon.

During the charge conference, the Steels also requested that the trial court submit a question and instructions on statutory abandonment, as follows:

Was the lane abandoned as a public road during or after 1955?

You are instructed that a public road is abandoned when its use has become so infrequent that one or more adjoining landowners have enclosed the road with a fence continuously for twenty (20) years and the road is not reasonably necessary to reach adjoining real property.

Answer 'Yes' of 'No'

Answer: _____

■ The Steels raised the issue of statutory abandonment in their written pleadings. They allege the issue was raised by some evidence and that the question was submitted to the court for a charge in substantially correct form. They contend this entitled them to have their question and accompanying instructions submitted to the jury. *See Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 718 (Tex. 1995). In reviewing the record, we hold the trial court erred when it refused to submit the question and its accompanying instructions on statutory abandonment. However, our analysis does not end there.

■ No judgment may be reversed on appeal on the grounds that the trial court made an error of law unless the court of appeals concludes that the error complained of caused the rendition of an improper judgment. TEX.R.APP. P. 44.1(a)(1). To determine whether an error in a jury charge is reversible, we must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. *Passons v. University of Texas at Austin,* 969 S.W.2d 560, 563 (Tex. App.—Austin 1998, no writ). Error will be deemed reversible only if, when viewed in the light of the totality of these circumstances, it amounted to such a denial of the rights of the complaining parties as was reasonably calculated and probably did cause the rendition of an improper judgment. *Reinhart v. Young,* 906 S.W.2d 471, 473 (Tex.1995). We must, therefore, perform a harm analysis to determine if the error is reversible. *Passons,* 969 S.W.2d at 563.

Before statutory abandonment could become applicable to the facts of this case, the Steels had to show that the Upper Centralia Road was not reasonably necessary to reach adjoining real property. The only evidence that the Upper Centralia Road was not necessary for ingress and egress from Wheeler's 192–acre tract was Bryan Steel's testimony that he had once seen Wheeler moving timber across Wayne Caldwell's property. None of the other witnesses, however, testified that there was any other reasonable access to the 192–acre tract.

C.R. Hodges, a registered public surveyor who had surveyed the land in question, testified that there was no access to any other public road from Wheeler's property other than the Upper Centralia Road. Bill Gilder, a witness who had lived on the 192–acre tract in the late 1940's, testified that the Upper Centralia Road was the only road used to get in and out of the property. David Rains stated the same. Homer Lee, who had cut timber on the 192–acre tract, testified that he had used the Upper Centralia Road to get in and out of the tract. Charles Hallmark averred that the Upper Centralia Road was the only roadway or access to the 192 acres which he ever used because he knew of no other way. Wheeler, himself, testified that before he purchased the acreage, he had examined the maps at the Houston County appraisal district to determine what kind of access there was to the property. He said that his review of the maps showed that the only access to the 192–acre tract was the Upper Centralia Road.

Finally, after Bryan Steel testified about the possibility of ingress and egress over Wayne Caldwell's property, Caldwell himself was called as a rebuttal witness. He testified that he had once allowed Wheeler to move some timber across his place because the Steels had blocked the ingress and egress over the Upper Centralia Road. Caldwell testified he made it clear to Wheeler that this was "a one-shot deal." Caldwell stated that Wheeler had approached him about purchasing an easement across his property, but he had told him that he did not have enough frontage to convey any type of easement or strip of land for ingress and egress purposes. He went on to explain that he only had approximately 150–200 feet of frontage for his property and that the manner in which his house and shop were situated made it impossible to give Wheeler ingress and egress. Caldwell testified that if he were

to sell Wheeler an easement, he would never be able to sell his place for a reasonable price in the future.

The Steels contend that Bryan Steels' testimony that he had once seen Wheeler moving timber across Caldwell's place was enough to require the trial court to submit a question and instruction on statutory abandonment to the jury in the court's charge. *See Exxon Corp. v. Perez*, 842 S.W.2d 629, 631 (Tex.1992). The *Exxon* case can be distinguished from the case before us in that there the record was replete with evidence to support the question which had not been submitted to the jury. *Id.* at 630. In this case, there was only the one mention of access to Wheeler's property other than by the Upper Centralia Road. That testimony was rebutted by all of the other witnesses. We hold that the evidence was so conclusive that there was no other reasonable way in and out of the property that the failure to submit the question on statutory abandonment to the jury was harmless error. *Reinhart*, 906 S.W.2d at 473. The Steels' issue one is overruled.

The Steels argue in their fourth issue that the trial court erred when it awarded Wheeler attorneys' fees under the Uniform Declaratory Judgments Act because any declaratory relief sought added nothing to, nor detracted from, the basic coercive judgment sought and obtained. Wheeler only sought relief from the court after the Steels' precipitous action denying him access to his 192–acre tract across the Upper Centralia Road. We hold that invoking the Declaratory Judgments Act to determine rights of ingress and egress is proper. *Lindner v. Hill*, 691 S.W.2d 590, 591 (Tex.1985). In addition, awarding attorneys' fees to the prevailing party in a declaratory judgment action is appropriate. *Spiller v. Spiller*, 901 S.W.2d 553, 560 (Tex.App.—San Antonio 1995, writ denied). The record shows that the award of $14,800.00 was within the trial court's discretion. We overrule the Steels' fourth issue.

The judgment of the trial court is *affirmed*.