THE CITY OF SAN ANTONIO,
Appellant,

v.

TPLP OFFICE PARK PROPERTIES,
LTD. and MSDW Southwest Partners,
L.L.P., Appellees.

No. 04–03–00017–CV.

Court of Appeals of Texas,
San Antonio.

Sept. 29, 2004.

Rehearing Overruled Nov. 9, 2004.

Fred R. Jones, Goode Casseb Jones Riklin Choate & Watson, Andrew Martin, City Attorney, San Antonio, for appellant.

Douglas W. Becker, Mark A. Randolph, Hornberger Sheehan Fuller & Beiter Incorporated, Charles M. Jefferson, Law Office of Charles M. Jefferson, Mayo J. Galindo, San Antonio, for appellees.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

KAREN ANGELINI, Justice.

This appeal arises from a land use case. The City of San Antonio (City), appellant in this case, took steps to close a private driveway which connects a public street in a business park to a public street in a residential neighborhood. Appellees TPLP Office Park Properties, Ltd. (Office Park) and MSDW Southwest Partners, L.L.P. (MSDW) filed suit to contest the validity of the City's action, arguing it was an invalid exercise of the City's police power and that closing the driveway would result in a regulatory taking of their property. Following a bench trial, the trial court found in favor of Office Park and MSDW and halted the City's closure of the driveway. The City now appeals this ruling in eight issues.

### BACKGROUND

In the early 1970s, the City of San Antonio approved a zoning case requested by developer Max Kaplan for a 60–acre subdivision, the Park Ten Subdivision. Subsequent to the issuance of the February 1971 ordinance, the area was rezoned from a "B" family residential district into four separate types of districts. Lots 15 to 39 were rezoned as an "R–2" residential district, while Lot 40 was split into three business districts, a "B–1," "B–2," and a "B–3." This plan was approved by the City Council provided that there was "no access to Freiling Drive from the commercial zones" and that a "non-access easement [was] furnished between the 'R–2' two

family residential district and the 'B-1' business district."

Kaplan attempted to have the condition removed from the rezoning ordinance in late 1971, but his request was denied. In August of 1972, the "R-2" district was again rezoned, this time as a "B-1" district. The 1972 ordinance contained another restriction, echoing the sentiments of the 1971 document; the reclassification was predicated upon the condition that no public or private street entering or exiting from or to Freiling Drive was to be permitted.

In November of 1973, Kaplan purchased a triangular piece of frontage road,[1] partially within the corporate limits of Balcones Heights. Kaplan extended a private roadway, also known as the Freiling Driveway and the subject of this suit, through the existing roadway and onto Freiling Drive. Kaplan then dedicated an easement over the Driveway for the benefit of all property owners in the Park Ten Subdivision.[2]

In 1975, Kaplan applied for a further replat of the Park Ten Subdivision. The replat was to add the triangular piece of land and also included the Freiling Driveway access onto Freiling Drive. This replat was approved by the San Antonio Planning Commission and the City of Balcones Heights Council.

In 1989, Gordon Hartman, another developer, requested yet another replat of the Park Ten Subdivision to permit the construction of single family residential homes on the south side of Freiling Drive. This plat was also approved by the San Antonio Planning Commission. This approval, like the one in 1975, included the Freiling Driveway, running from Freiling Drive to First Park Ten Boulevard.

From the time the Freiling Driveway was constructed, several businesses either purchased or built commercial facilities in the Park Ten Subdivision. The Freiling Driveway subsequently became the primary means of access to and from the subdivision. Then, in August of 1999, the City erected both a barricade and signs notifying the public of its intent to close the Driveway. Office Park filed suit, seeking to enjoin the City from closing the Driveway. MSDW intervened, adopting the same allegations made by Office Park. Specifically, the two claimed that closing the Driveway would be an unreasonable exercise of the City's police power and would constitute inverse condemnation. Office Park also applied for and received a temporary restraining order which prohibited the City from closing the Driveway. In answer to Office Park and MSDW's claims, the City filed a counterclaim, seeking to enforce the 1971 ordinance and its predecessors and to enjoin further violations.

On June 28, 2001, the San Antonio City Council held another public hearing on the issue of the Freiling Driveway. The ordinance passed at this meeting authorized the "enforcement of prior ordinances by closure of the street/access between Freiling Drive and Park Ten Boulevard." The ordinance declared the Freiling Driveway to violate "the spirit, intent, and letter of the 1971 and 1972 zoning ordinances" because it provided access from the commer-

1. This triangular piece of land was part of property owned by Drs. Robert James and Mason Matthews. The land lay within the corporate limits of Balcones Heights and the doctors had a building permit to conduct a veterinary clinic on the adjoining property.

This permit included authorization to have a curb cut onto Freiling Drive to obtain access to the clinic.

2. This easement was granted in 1975, two years after Kaplan purchased the land.

cial zones to the residential zone/ Freiling Drive. The ordinance also stated that this access had caused a "dramatic" increase in commercial traffic, a "severe nuisance" to the residents of the neighborhood, and a safety hazard to the area and that closure of the driveway would "promote the safety, comfort, health, convenience, and general welfare of the public and the community."

In November of 2001, the trial court held an evidentiary hearing to determine two of the principle issues in the case: (1) whether the proposed action by the City in closing the street/access was a valid exercise of its police power; and (2) whether the closing of the street/access would result in a material and substantial impairment of access or merely in a circuitry of travel. Following the hearing, the trial court ruled in favor of Office Park/ MSDW, finding the closure of the Freiling Driveway to be an invalid exercise of the City's police power and a material and substantial impairment of access. The court entered judgment in favor of Office Park and MSDW, issuing Findings of Fact and Conclusions of Law in conjunction with its final judgment. The City now appeals from this judgment in eight issues.

### EVIDENTIARY HEARING OR BENCH TRIAL

■ In its fourth issue, the City contends the trial court abused its discretion in deciding "all of the issues in the case" during what was supposed to be a pre-trial evidentiary hearing rather than a bench trial. Because this is a threshold issue, we address it first.

Specifically, the City claims the court went beyond the scope of the agreed to docket control order at the pre-trial hearing and abused its discretion in denying the City's request for a jury trial on allegedly unaddressed issues. In support of this contention, the City cites two cases, *State v. Wood Oil Distributing, Inc.,* 751

S.W.2d 863 (Tex.1988) and *State v. Heal,* 917 S.W.2d 6 (Tex.1996), for the proposition that the issue of whether access rights have been materially and substantially impaired is a question of law, and, as such, it is incumbent upon the trial court to make this determination prior to trial and to control the admission of evidence accordingly. *Heal,* 917 S.W.2d at 9 (citing *Wood Oil,* 751 S.W.2d at 865).

While the above referenced proposition is true, it is irrelevant to the issue at hand. In *Wood Oil,* the appellant contested the exclusion of evidence regarding circuitry of travel. *Wood Oil,* 751 S.W.2d at 865. The supreme court held the question of whether there has been a material and substantial impairment of access to a be a question of law which should be decided before trial. The supreme court also upheld the trial court's determination, finding the circuitry testimony to be improper as a matter of law since it was related to a non-compensable matter. *Id.* In *Heal,* the court reiterated the *Wood Oil* proposition and determined that the issue of whether a claimant has established that its access rights have been impaired is a threshold issue and a prerequisite to recovery. *Heal,* 917 S.W.2d at 9. Because the trial court had never expressly ruled on this threshold issue, the supreme court went on to discuss the fact that conclusions of law which are necessary, but not made, should be deemed in favor of the judgment. *Id.* These cases, while addressing the pre-trial conclusion of law regarding access impairment, do not discuss a city's exercise of its police power or whether all issues in a case may be resolved by such a pre-trial determination. The cases are, therefore, not analogous to the facts of the present case.

The City argues that the trial court failed to address its counterclaims, as well as Office Park and MSDW's claims based on regulatory taking, estoppel, and their

request for a declaratory judgment. We begin our analysis of this issue by examining the City's counterclaims. The City's Second Amended Original Counterclaim is divided into four sections. First, the counterclaim alleges that the existence of the Freiling Driveway is a violation of city ordinances. Second, the counterclaim asserts the right of the City to close the Driveway and seek a permanent injunction enjoining any future violation of city ordinances. Third, the counterclaim seeks to recover the costs of implementing the closure of the Driveway. Finally, the City's counterclaim requests a declaratory judgment regarding its rights in connection with the Driveway, its police power, and its authority to enforce the ordinances in place.

Each of these claims, as well as the aforementioned appellees' claims, is addressed by the court's findings on the issues of police power and material and substantial impairment of access. As to these two issues, the trial court found:

(1) The attempted closure of the Freiling Drive street/access in question in this lawsuit by the Defendant, City of San Antonio, would constitute an unreasonable exercise of the City's police powers;

(2) Defendant, City of San Antonio, may exercise its police power over the design and/or configuration of the street/access in question to the extent that such action is reasonably necessary to alleviate a hazardous condition, if any, provided that such exercise of police power does not result in the closure or material impairment of the present usage of the street/access in question in this lawsuit;

(3) Closure of the Freiling Drive street/access would result in a compensable taking of the property rights of the Plaintiff and Intervenor; and

(4) Defendant, City of San Antonio, is estopped as a matter of law from closing the street/access in this case.

Under the Local Government Code, the governing body of a municipality may use its police power to enforce any ordinance of the municipality. TEX. LOC. GOV'T CODE ANN. § 54.001(a) (Vernon 1999). Because the trial court found the City's closure of the Freiling Driveway to be an invalid use of its police power, it is implicit that the Driveway was not in violation of a city ordinance. In turn, if the Driveway failed to violate any ordinance, the City cannot ask for a permanent injunction to ensure no further violation or ask for damages for the cost of closing the driveway. Finally, the City's request for a declaratory judgment is addressed in that the court found San Antonio to have the police power to reconfigure the Driveway and alleviate any hazardous condition, but not to close the Freiling Driveway all together. Thus, each of the City's counterclaims is addressed by the trial court's findings by the two "pre-trial" issues. In addition, each of the appellees' issues (regulatory taking, estoppel, and declaratory judgment) is expressly reached by the trial court's judgment.

Because each of the City's counterclaims and each of the appellees' additional issues is addressed by these pre-trial matters, the trial court acted within its discretion in disposing of all claims contemplated by the issues of invalid exercise of police power and material and substantial impairment of access. We, therefore, overrule the City's fourth issue.

### INVALID EXERCISE OF POLICE POWER

██ Two of the matters most essential to this appeal involve the City's police power and whether there has been a material and substantial impairment of access. The City addresses these topics in issues

one and three. In issue one, the City argues the closing of the driveway is a valid exercise of its police power. The police power is a grant of authority from the people to their government agents for the protection of the health, safety, comfort, and welfare of the public. *Grothues v. City of Helotes*, 928 S.W.2d 725, 729 n. 6 (Tex.App.-San Antonio 1996, no writ). It is vested in the state and flows to a general law municipality through a legislative grant. *Id.* As stated above, section 54.001(a) of the Local Government Code states that the governing body of a municipality may enforce each rule, ordinance, or police regulation of the municipality and may punish a violation of a rule, ordinance, or police regulation. TEX. LOC. GOV'T CODE ANN. § 54.001(a) (Vernon 1999). Specifically, in its first issue, the City argues the trial court erred in finding the decision to close the driveway to be an unreasonable exercise of police power. The City makes several contentions in support of this assertion. First, the City argues that it has exclusive control over the streets of the municipality, including the power to regulate, control, alter, or close streets for the benefit of the general public. TEX. TRANSP. CODE ANN. §§ 311.001; 311.007 (Vernon 1999). Second, the City asserts its power to classify and zone property and to enforce zoning decisions. *See* TEX. LOC. GOV'T CODE ANN. §§ 54.001, 211.001, 211.003 (Vernon 1999). Furthering this assertion, the City cites *City of San Antonio v. Arden Encino Partners*, 103 S.W.3d 627, 630 (Tex.App.-San Antonio 2003, no pet.), in which this court held that "courts must give deference to the city's action such that, if reasonable minds may differ as to whether or not a particular zoning ordinance has a substantial relationship to the

public health, safety, morals or general welfare, no clear abuse of discretion is shown." In addition, the court decided an appellate court "may not interfere unless a challenged ordinance is shown to represent a clear abuse of municipal discretion or unless there is conclusive evidence that a zoning ordinance is arbitrary either generally or as to particular property." *Id.* Third, the City argues that there is no evidence to show the State of Texas as opposing the City's actions in closing the Freiling Driveway. Finally, the City delves into a substantive due process analysis, arguing that its actions were rationally related to a legitimate goal (the public safety and residents' "quality of life") and, therefore, a valid exercise of its police power under the above statutes.

The City's first three arguments are inapplicable to the situation at hand. None of the parties is contesting the existence of the City's police power under the Texas Transportation Code or the Texas Local Government Code, disposing of the City's first two arguments. Neither is the validity of the 1971, 1972, or 2001 ordinances being challenged. Therefore, the *Arden Encino Partners* case is inapplicable.[3] Instead, Office Park and MSDW challenge the City's contention that the Freiling Driveway is actually in violation of the ordinances. Thus, the only possible viable argument the City has lies in its substantive due process analysis.

In spite of the City's varying contentions regarding its police power, the only real question is whether the trial court's findings of fact and conclusions of law are legally and factually sufficient. Although the substantive due process argument is not worded as a sufficiency challenge, the

---

**3.** The *Arden Encino Partners* case deals with an action filed against the City challenging a zoning change to property. As stated above, in the present case, neither Office Park nor

MSDW challenges the validity of any of the involved ordinances, so the City's zoning power is not in question as was the case in *Arden Encino Partners*, 103 S.W.3d at 627.

issue essentially disputes the trial court's findings that (1) the traffic entering and leaving the Park Ten Subdivision from Freiling Drive does not create a safety hazard or a nuisance; (2) the City's attempted closure of the Freiling Driveway would not be in furtherance of the public interest and would not promote the safety, comfort, health, convenience, and/ or general welfare of the public or the community; and (3) the Driveway does not approach Freiling Drive or traverse the one-foot non-access easement. The argument also challenges the trial court's conclusion that the closure of the Freiling Driveway constitutes an unreasonable exercise of the City's police powers.

Findings of fact entered in a case tried to the bench have the same force and effect as a jury's verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991); *Eller Media Co. v. City of Houston*, 101 S.W.3d 668, 673 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). Findings of fact may be reviewed for both legal and factual sufficiency, applying the same standards applied in reviewing the sufficiency of the evidence supporting a jury's finding. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002). In reviewing a no evidence challenge, we consider only the evidence and reasonable inferences viewed in their most favorable light, which support the court's findings. *Lewelling v. Lewelling*, 796 S.W.2d 164, 166 (Tex.1990). If there is more than a scintilla of evidence to support the finding, the no evidence challenge must fail. *Id.* In considering the factual sufficiency of the evidence supporting a finding, we review all the evidence and reverse only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986).

We review a trial court's conclusions of law only as a legal question. *Marchand*, 83 S.W.3d at 794. Conclusions of law are reviewed de novo and will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Mack v. Landry*, 22 S.W.3d 524, 528 (Tex.App.-Houston [14th Dist.] 2000, no pet.). We review the legal conclusions drawn from the facts found to determine their correctness. *Dallas County v. Sweitzer*, 881 S.W.2d 757, 763 (Tex.App.-Dallas 1994, writ denied.). We will follow a trial court's conclusions of law unless they are erroneous as a matter of law. *Spiller v. Spiller*, 901 S.W.2d 553, 556 (Tex.App.-San Antonio 1995, writ denied).

■ At trial, the City presented the testimony of several witnesses, including Andrew Ballard, the City of San Antonio's transportation engineer. Ballard was involved in the attempted closure of the Driveway and testified that, although a portion of the Driveway went through Balcones Heights and out of the jurisdiction of San Antonio, the only purpose for the Driveway was to connect the business park and Freiling Drive in violation of the City Council's objectives in enacting the 1971 and 1972 ordinances. He also testified that high traffic counts led to the conclusion that there was an "excessive amount" of commercial traffic on portions of Freiling Drive and that these high traffic counts justified the closure of the Driveway. However, Ballard also admitted that a city does not have the power to zone property that is not within its boundaries, i.e. Balcones Heights, and that he could find no reports of accidents attributable to the traffic generated by the Freiling Driveway.

Office Park also offered the testimony of its experts at trial. Gerald Overby, a civil engineer who had worked extensively for the City in the past and had over thirty

years of experience, concluded that the Driveway legally accessed Freiling Drive and did not violate the 1971 zoning ordinance because it was constructed to the west of that original zoning case. He also testified that the Driveway did not cross the non-access easement. Office Park/MSDW also called on David Steitle, the former Director of Public Works for San Antonio, as a witness. Steitle testified that the Driveway complied with the 1971 zoning ordinance and did not provide access from the commercial zone directly to Freiling; Steitle averred that, in order to access Freiling Drive, the commercial zone must be exited and another area traversed. In addition, the City's approval of the 1975 and 1989 plats impliedly included the approval of the Freiling Driveway as both plats include the Driveway. Finally, the testimony of John German, the City's Director of Public Works was presented, in which he stated that he had not been concerned about the Driveway prior to his discussions with a City Councilman and that the design of the intersection between the Driveway and Freiling was what most concerned him, causing a "minor impact on safety."

■ Under the sufficiency standards as set out above, we look first to the trial court's findings of fact. Considering only the evidence and reasonable inferences in support of the court's findings, there is more than a scintilla of evidence to support the inference that the traffic entering and leaving the Subdivision does not create a safety hazard or a nuisance and that the closure of the Driveway would not promote the public interest. In addition, there is some evidence that the Driveway does not traverse the non-access easement and that it meets the requirements of the 1971 ordinance. As such, the City's no evidence challenge of the findings of fact must fail. *See Lewelling,* 796 S.W.2d at 166. Re-

viewing the City's factual sufficiency challenge, the findings are not so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Pool,* 715 S.W.2d at 635. Accordingly, we uphold the trial court's findings of fact.

■ As to the trial court's conclusions of law, it is apparent that the judgment can be sustained. *See Mack,* 22 S.W.3d at 527. If the Driveway fails to violate any City ordinance or to create a safety hazard, the City does not have the police power to close the Driveway. *See* TEX. LOCAL GOV'T CODE ANN. 54.001(a) (Vernon 1999). The trial court's conclusion that the closure was an invalid exercise of the City's police power should therefore be upheld. Accordingly, we overrule the City's first issue.

### MATERIAL AND SUBSTANTIAL IMPAIRMENT OF ACCESS

■ In its third issue, the City argues that closing the Driveway will not result in a material and substantial impairment of access. Specifically, the City contends that the Freiling Driveway is merely a shortcut for the tenants of the Park Ten Subdivision and that closing the Driveway would not unreasonably interfere with Office Park or MSDW's use of their property. According to the City, the closure would not result in a substantial and material impairment of access because "reasonable and suitable access" will still be available.

■ Whether access rights have been materially and substantially impaired is a question of law. *State v. Heal,* 917 S.W.2d 6, 9 (Tex.1996); *City of Waco v. Texland Corp.,* 446 S.W.2d 1 (Tex.1969). We review questions of law without deference to a lower court's conclusion. *Heal,* 917 S.W.2d at 9; *Barber v. Colorado Indep. Sch. Dist.,* 901 S.W.2d 447, 450 (Tex.1995). In order to show material and substantial impairment, the property owner must es-

tablish (1) a total temporary restriction of access, (2) a partial permanent restriction of access, or (3) a partial temporary restriction of access due to illegal or negligent activity. *State v. Schmidt,* 867 S.W.2d 769, 775 (Tex.1993). This test acknowledges situations in which access is rendered unreasonably deficient even though normal access remains reasonably available. *Heal,* 917 S.W.2d at 10.

The City argues that the trial court erred in finding Office Park/ MSDW to have suffered a material and substantial impairment of access because there were other ways by which access to the Park Ten Subdivision could be gained. As stated above, courts may still find a material impairment even when there has only been a partial permanent restriction of access. *Schmidt,* 867 S.W.2d at 775. At trial, Office Park/ MSDW presented the testimony of property manager Debra Bell, professional real estate appraiser Blaire Stouffer, and former San Antonio Director of Public Works David Steitle. Bell explained that access to the Subdivision could be gained through two main entrances, one being the Driveway. She went on to indicate that approximately 80% to 90% of the tenants in the Subdivision approached the property from this direction and that 100% of those persons used the Freiling Driveway to gain access to the Subdivision. In addition, Bell discussed the difficulty of approaching the property from the opposite direction, along I–10, a condition exacerbated by the massive construction project scheduled to take place over a multi-year span. She also mentioned the probable diminution in value of the property which would result from a perception problem following from the decreased access.

Stouffer spoke regarding the decreased lease rate for the properties which would flow from impaired access. He explained

that the closure of the Driveway would materially impact access to the property and decrease the value of the two appellees' buildings by about $2.3 million. Steitle also testified, adding that he believed the future construction along I–10 could result in "enormous" and "prohibitive" delays in entering and exiting the property.

Under these circumstances, Office Park/ MSDW can be said to have suffered a material and substantial impairment of access. *See Schmidt,* 867 S.W.2d at 775. We overrule the City's third issue.

## EXCLUSION OF EVIDENCE

■ In its second issue, the City contends the trial court erred in excluding portions of the legislative record from the City Council meetings which dealt with both the 1971 ordinance and the 2001 ordinance. Specifically, the City argues the trial court should have admitted three separate exhibits, each dealing with different portions of the legislative record.

■ The admission or exclusion of evidence is a matter within the trial court's discretion. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995); *Hall v. Diamond Shamrock Refining Co.,* 82 S.W.3d 5, 23 (Tex.App.-San Antonio 2001, pet. granted). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to guiding principles. *Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex.1997); *Hall,* 82 S.W.3d at 23. In order to reverse a trial court's judgment based on error in the admission or exclusion of evidence, an appellant must show that the trial court's ruling was in error and that the error was calculated to cause and probably did cause the rendition of an improper judgment. TEX.R.APP. P. 44.1; *Alvarado,* 897 S.W.2d at 753; *Hall,* 82 S.W.3d at 23. The complaining party is not required to prove that "but for" the exclusion of evidence, a dif-

ferent judgment would have resulted. *Hall,* 82 S.W.3d at 23. Rather, the party is only required to show that the exclusion of the evidence probably resulted in the rendition of an improper judgment. *Id.* In order to determine whether the error probably resulted in an improper judgment, we must review the entire record. *See Alvarado,* 897 S.W.2d at 754; *Hall,* 82 S.W.3d at 23.

The City contends the trial court abused its discretion in excluding: (1) Exhibit 186–A, the minutes and "supporting documents" from the June 28, 2001, City Council meeting; (2) Exhibit 198, a videotape of the same City Council meeting; and (3) Exhibit 197, a certified copy of an audiotape of the 1971 City Council meeting. Although the court admitted the ordinances approved at both the 1971 and the 2001 meeting, it disallowed the admission of the superfluous history, ordering that these documents instead be included in the record. In support of its argument that the trial court erred, the City cites Texas Government Code 311.023 which states that a court "may" consider legislative history in construing a statute. *See* Tex. Gov't Code Ann. § 311.023(3) (Vernon 1998). Office Park refutes the City's argument, pointing out that the language of the statute indicates a court "may," not "shall," consider the legislative history. The use of the word "may" creates discretion in the trial court, rather than imposing a duty upon it. *See* Tex. Gov't Code Ann. § 311.016 (Vernon 1998). The City

has failed to show the trial court's exclusion of the evidence was arbitrary or against guiding principles. As such, the City has not shown the trial court's decision was an abuse of discretion.[4]

▆ Even assuming the trial court's exclusion of the records was an abuse of discretion, Office Park rightly argues that the City has wholly failed to show this error caused the rendition of an improper judgment. Examining the record as a whole, including all of the evidence presented at trial, it is not probable the City would have prevailed solely on the basis of the excluded records. We overrule the City's second issue.

## REGULATORY TAKING

▆ In its fifth issue, the City contends the closure is not a taking. The City claims that neither Office Park nor MSDW ever possessed a right to use the Freiling Driveway,[5] so there could not have been a taking. In addition, the City advances the proposition that the closure of the Driveway advances a legitimate state interest, does not deprive Office Park or MSDW of all economically viable use of their property, will not unreasonably interfere with Office Park or MSDW's right to use or enjoy their property, and will not have a sufficiently severe economic impact or interfere with the two businesses' reasonable investment-backed expectations. Therefore, argues the City, the closure can not legally constitute a regulatory taking.[6]

---

**4.** In addition to Office Park's arguments, MSDW avers that the records were properly excluded because they were not properly authenticated under Texas Rule of Evidence 902. There appears, however, to be no dispute regarding the authenticity of the audio or video tapes, so this argument seems to be misplaced. MSDW fails to address the court's exclusion of the remainder of the legislative history.

**5.** Under this argument, the Driveway was expressly prohibited by the 1971 ordinance, so there could have been no right to use the land in this manner.

**6.** Part of the City's argument is predicated upon a valid exercise of its police power. We have previously found the City's actions to be an invalid exercise of its police power. Thus, the portion of the argument regarding legiti-

As with the issue of police power, the crux of the City's issue five lies in the legal and factually sufficiency of the trial court's conclusions of law. The City impliedly challenges the trial court's conclusion that closure of access to the Subdivision through the Freiling Driveway will result in a compensable taking of Office Park and MSDW's rights. We apply the traditional standard as set out above.

■■■■ A direct physical invasion of property is not required under the Texas Constitution to entitle an owner to compensation. *See DuPuy v. City of Waco,* 396 S.W.2d 103, 108 (Tex.1965). The law in Texas regarding the right to access is well-settled: "[A]n abutting property owner possesses an easement of access which is a property right; that this easement is not limited to a right of access to the system of public roads; and that diminishment in the value of property resulting from a loss of access constitutes damage." *Id.* In considering whether or not there has been a compensable taking, all factors affecting access should be considered, including whether access to the property will be unsafe as a result of the closure. *State v. Northborough Ctr., Inc.,* 987 S.W.2d 187, 193 (Tex.App.-Houston [14th Dist.] 1999, pet. denied).

The previously discussed testimony regarding impairment of access was introduced at trial. In addition, David Steitle testified as to the potential safety hazard which would be created by closing the Driveway. Cars exiting the Subdivision onto the I–10 access road would have to merge from a stop into traffic traveling approximately forty miles per hour. This would create a stacking effect in the parking lot which would, in turn, cause a potential safety hazard to the pedestrians leaving the buildings in the Subdivision. Under these circumstances, the City's actions in closing the Driveway constitute a regulatory taking. We overrule the City's fifth issue.

## ESTOPPEL

■■■■ In its sixth issue, the City claims the trial court erred in estopping the City from closing the Driveway. Issue seven is also related to the issue of estoppel in that the City claims it is not bound by any prior actions of the Planning Commission. As in issue four, the City claims that estoppel was not in the agreed upon scope of the pre-trial hearing and that it did not waive its jury demand as to this issue.[7] As stated earlier, the trial court found the City to be estopped from closing the driveway in it final judgment.

■■■■ As a general rule, the doctrine of estoppel does not apply against a governmental unit exercising its public or governmental functions. *City of Hutchins v. Prasifka,* 450 S.W.2d 829, 835 (Tex.1970). Courts recognize an exception, however, where no governmental function is impaired and an estoppel is necessary to prevent injustice. *Roberts v. Haltom City,* 543 S.W.2d 75, 80 (Tex.1976); *Dallas County Flood Control Dist. No. 1 v. Cross,* 815 S.W.2d 271, 284 (Tex.App.-Dallas 1991, writ denied).

In issue six, the City contends that the trial court's ruling regarding estoppel is against the general rule. However, the trial court also found the City's actions to

mate state interest and police power is without merit.

7. Although the City complains about the scope of the hearing in both issues four and six, it contends, in issue four, that the issue of estoppel is not addressed by the court's ruling. Yet, in issue six, the City claims estoppel was not open for discussion at the hearing. In short, the City refutes a portion of its own argument.

be outside of the realm of its governmental functions because it held the City was not properly exercising its police power or enforcing a zoning ordinance. Therefore, the estoppel falls within the exception to the rule; no governmental function was impaired and the estoppel was necessary to prevent injustice to the tenants of Office Park and MSDW. *See Roberts,* 543 S.W.2d at 80. We overrule the City's sixth issue.

In issue seven, the City argues that it is not bound by the Planning Commission's approval of the 1975 and 1989 plats or the Commission's allegedly erroneous decision regarding San Antonio's lack of jurisdiction over the Driveway. This argument is unpersuasive. As stated above, the doctrine of estoppel may be exercised against municipalities where justice requires its application. *Clear Lake City Water Authority v. Winograd,* 695 S.W.2d 632, 640 (Tex.App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.). There must, however, be some evidence that the party being estopped took some affirmative action that was reasonably relied upon by another party to its detriment. *City of Dallas v. Rosenthal,* 239 S.W.2d 636, 645–46 (Tex.App.-Dallas 1951, writ ref'd n.r.e.).

In support of its argument, the City cites the minutes of the 1975 Commission meeting, as well as advancing the theory that a planning commission's actions can not overrule an ordinance. The minutes are not a part of the record, and the revised plats do not attempt to reconstrue or overrule any City ordinance. The plats do, however, clearly display the existence of the Freiling Driveway, and witnesses testified to the fact that the approval by the Commission could be equated with approval by the City. The City, then, is eschewed with the knowledge of the Planning Commission's actions in revising the plat. This means the City knew of the Driveway's existence for approximately twenty-five years before it took steps to close the alleged safety hazard. In addition, the City approved the curb cut and several building permits in the business park. Office Park and MSDW then relied on these actions and spent millions of dollars purchasing the land and building it up. Under the above standard, the City acted affirmatively and the appellees relied on this action to their detriment. *See City of Dallas,* 239 S.W.2d at 645. We overrule the City's seventh issue.

### ATTORNEY'S FEES

In its eighth and final issue, the City contends the trial court erred in awarding attorney's fees to Office Park and MSDW. On appeal, the City advances two arguments for the proposition that the trial court wrongly granted attorney's fees to the appellees. First, the City argues that any claim for attorney's fees is barred or limited by sovereign immunity. Second, the City contends the Declaratory Judgment Act was improperly used as a "mere vehicle" to recover attorney's fees.

The award of attorney's fees is discretionary and cannot be reversed on appeal absent a clear abuse of discretion. *See Texas Dep't. of Pub. Safety v. Moore,* 985 S.W.2d 149, 157 (Tex.App.-Austin 1998, no pet.). A trial court abuses its discretion when it acts without regard to guiding legal principles or supporting evidence. *See Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998).

The Uniform Declaratory Judgment Act authorizes the awarding of costs and reasonable and necessary attorney's fees as are equitable and just. Tex. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). Under the Act, however, declaratory relief against a sovereign is authorized only in specific situations. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.004

(Vernon 1997). In *Texas Education Agency v. Leeper*, the Texas Supreme Court held the Act to contemplate that governmental entities must be joined in suits to construe their legislative pronouncements. 893 S.W.2d 432, 446 (Tex.1994). The provisions which require governmental entities to be joined in such suits provide the context for the Act's authorization, in section 37.009, of attorney fee awards. *Id.* Like the supreme court in *Leeper*, we conclude that by authorizing declaratory judgment actions to construe the legislative enactments of governmental entities and authorizing awards of attorney fees, the Declaratory Judgment Act necessarily waives governmental immunity for such awards. *Id.* In the current situation, Office Park and MSDW challenge the City's enactment mandating the closure of Freiling Drive, asking the Court for a declaratory judgment for injunctive relief.

The City also argues that the Declaratory Judgment Act was used as a "mere vehicle" to recover fees. In spite of this claim, examining Office Park's petition, it is clear that the suit is for declaratory and injunctive relief; these claims have not been bootstrapped onto the suit in order to obtain attorney's fees. TPLP and MSDW validly ask the trial court to find against the City's actions as an invalid exercise of its police power and to find that such actions constitute a taking.

The prevailing case law allows a claim for attorney's fees against a sovereign. In addition, the award of attorney's fees is allowed under the Declaratory Judgment Act in a case such as the one at hand. Because we have affirmed the legal basis supporting the trial court's judgment, we affirm the award of attorney's fees. *See Steel v. Wheeler*, 993 S.W.2d 376, 381 (Tex. App.-Tyler 1999, pet. denied) (affirming the award of attorney's fees to the prevailing party in a declaratory judgment action). We overrule the City's eighth issue.

CONCLUSION

The judgment of the trial court is affirmed in all respects.

Dissenting opinion by PAUL W. GREEN, Justice.

PAUL W. GREEN, Justice, dissenting.

This case is about the right of the City of San Antonio ("the City") to block the ingress and egress of high volume commercial traffic through a residential area. While it is undisputed that the City has the authority to do so by virtue of its police powers to protect the health, safety and welfare of its citizens, it is contended in this case that the City acted arbitrarily in attempting to exercise its power. The trial court and the majority agree. I respectfully dissent.

Since 1971, the City has denied repeated requests by the developer of the Park Ten Business Park to allow commercial traffic to access Freiling Drive, a residential street, because of the detrimental effect that high volume commercial traffic would have on the subdivision and its residents. In spite of this, the developer achieved access to Freiling anyway by building a driveway across property it acquired in the adjacent city of Balcones Heights ("the Freiling Driveway"). In 1999, in response to repeated complaints about the high volume of traffic entering and exiting the business park via the Freiling Driveway, the City sought to enforce its prior zoning ordinances by erecting a barricade across the driveway in the City's right-of-way. And in 2001, the City passed a new ordinance for the "enforcement of prior ordinances *by closure of the street/access connection between Freiling Drive and Park Ten Boulevard.*" (emphasis added). The owners of property interests within the

Park Ten Business Park ("TPLP") sued to enjoin the City's action.

The 2001 ordinance cites potential safety hazards to school children and others, and a general nuisance to the residential neighborhood, as the basis for closing access to Freiling Drive via the Freiling Driveway. The action is also supported by the City traffic engineer who testified there is a design policy to separate commercial traffic from residential traffic. He said people who live in residential neighborhoods expect the volume of traffic to be consistent with that of a residential area. He further said the existence of the Freiling Driveway results in high traffic counts in the residential area that adversely affects the residents' quality of life, which justifies closing the driveway.

TPLP acknowledges the City has the power to close the driveway, but says that in this instance the City exercised its power arbitrarily. The basic complaint is that closure of the Freiling Driveway will result in material and substantial impairment of access to TPLP's property interests in violation of its substantive due process rights.

In *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922 (Tex.1998) the supreme court said:

A court should not set aside a zoning determination for a substantive due process violation unless the action has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense. A generally applicable zoning ordinance will survive a substantive due process challenge if it is designed to accomplish an objective within the government's police power and if a rational relationship exists between the ordinance and its purpose. This deferential inquiry does not focus on the ulti-

mate effectiveness of the ordinance, but on whether the enacting body could have rationally believed at the time of enactment that the ordinance would promote its objective. If it is at least fairly debatable that the decision was rationally related to legitimate government interests, the decision must be upheld. The ordinance will violate substantive due process only if it is *clearly* arbitrary and unreasonable.

*Id.* at 938. (quotations and citations omitted)(italics in original). Also, in *City of San Antonio v. Arden Encino Partners*, 103 S.W.3d 627 (Tex.App.-San Antonio 2003, no pet.), we emphasized the deferential approach that must be given to a city's zoning decisions:

Zoning is a legislative function of municipal government. Thus, the courts must give deference to the city's action such that if reasonable minds may differ as to whether or not a particular zoning ordinance has a substantial relationship to the public health, safety, morals or general welfare, no clear abuse of discretion is shown and the ordinance must stand as a valid exercise of the city's police power. No property owner has a vested interest in particular zoning classifications, and a city may rezone as public necessity demands. A zoning ordinance is presumed valid, and the burden is on the one seeking to prevent its enforcement to prove the ordinance is arbitrary or unreasonable because it bears no substantial relationship to the public health, safety, morals or general welfare. This extraordinary burden requires the complainant to show that no conclusive, or even *fairly issuable facts or conditions* exist in support of the city's exercise of the police power. Courts may not interfere unless a challenged ordinance is shown to represent a clear abuse of municipal discretion or unless there is

conclusive evidence that a zoning ordinance is arbitrary either generally or as to particular property.

964 S.W.2d at 930. (quotations and citations omitted)

TPLP contends these authorities are inapplicable because it claims not to be challenging the ordinances that form the basis for the City's action. But that cannot be so. The 2001 ordinance clearly provides for "closure of the street/access connection between Park Ten Boulevard to Freiling Drive," and TPLP failed to prove that "no conclusive, or even fairly issuable facts or conditions exist in support of the city's exercise of the police power."

The City's decision to close the Freiling Driveway is supported by more than enough evidence to justify the exercise of its police power. TPLP failed to conclusively prove that the City's action was arbitrary, or resulted in material and substantial impairment of access to TPLP's property interests. Because the City's action was arguably based on concerns over the safety and well-being of residents in the adjoining residential neighborhood, it was not an arbitrary and unreasonable exercise of its police powers.

The trial court's judgment should be reversed. Because the majority affirms, I respectfully dissent.