Larry GROTHUES, Alan Grothues, Thomas Grothues, and Maurice Grothues, Appellants,

v.

CITY OF HELOTES, Texas and Industrial Disposal Service Company, Inc. d/b/a Garbage Gobbler, and The State of Texas, Appellees.

No. 04–93–00151–CV.

Court of Appeals of Texas, San Antonio.

Aug. 14, 1996.

Keith M. Baker, George C. Noyes, Soules & Wallace, Thomas B. Black, San Antonio, for appellants.

Harvey L. Hardy, Hardy, Jacobson, Gazda & Jacobson, P.C., Julia W. Mann, J. Frank Onion, III, Wheatley & Onion, L.L.P., Donald R. Philbin, Jr., Campagnolo & Philbin, L.C., San Antonio, for appellees.

CHAPA, Chief Justice.

Pursuant to our order dated October 9, 1995, granting appellees' motion for en banc rehearing of the motion for rehearing, our opinion issued on January 25, 1995, is withdrawn and this opinion is substituted in its place.

The questions presented by this appeal are whether a general-law municipality, as distin-

guished from a home-rule municipality, has authority to grant an exclusive garbage-collection contract to a private corporation, and, if so, whether that municipality can enforce payments to the garbage-collection franchise by fining its citizens who refuse to pay. We affirm the trial court's summary judgment in favor of the City of Helotes.

## Factual Background

In February of 1992, the City of Helotes, a general-law municipality, enacted Ordinance No. 78 which awarded an exclusive franchise contract with Garbage Gobbler to collect and dispose of solid waste within the City. At the same time, the City enacted Ordinance No. 81 which required residents to use Garbage Gobbler exclusively, to pay its charges, and which authorized criminal sanctions for failure to do so. The Grothues, who are residents and landowners within the City, desired to dispose of their solid waste by transferring it to their business location in the City of San Antonio where it is removed by another garbage disposal company. When the City threatened to fine the Grothues for failing to pay Garbage Gobbler, the Grothues sued the City, Garbage Gobbler, and the State of Texas for a judgment declaring that the ordinances are unconstitutional and thus void, and for an injunction prohibiting enforcement of the ordinances and for attorney's fees. The City answered and counterclaimed for a judgment declaring the ordinances both valid and constitutional, and thus enforceable, and for attorney's fees. The State declined to participate in the litigation because the suit concerned neither the constitutionality nor validity of a statute. Both the Grothues and the City filed motions for summary judgment, each seeking the relief requested in their respective pleadings. After a hearing, the trial judge granted the City's motion for summary judgment and denied the Grothues' motion on November 9, 1992. Consequently, the Grothues brought this appeal.

## Subsequent Legislative Action

Appellants first contend that the City lacked authority to enter into the contract with Garbage Gobbler to exclusively collect and dispose of solid waste within the city limits of Helotes because the franchise exceeds the City's statutory authority as a general-law municipality. Likewise, the appellants argue that the City does not have the authority to require them to subscribe to Garbage Gobbler's services or to fine them for their failure to pay Garbage Gobbler for their solid waste removal. In this respect, appellants assert that since a municipality is a creature of the law created by the legislature, it possesses no power that is not conferred by its charter or by the general laws under which it was formed. See TEX. CONST. art. III, § 1 (Vernon 1984).

Our original opinion, issued January 25, 1995, agreed and found the City's ordinances void. While the matter was pending before us on rehearing, however, the legislature amended the County Solid Waste Control Act to provide a general-law municipality with the authority to contract with a private contractor for the collection and disposal of garbage and other solid waste. See Act of June 14, 1989, 71st Leg., ch. 678, 1989 Tex. Gen. Laws 2230, amended by Act of June 12, 1995, 74th Leg., ch. 486, 1995 Tex. Gen. Laws 3212 (codified at TEX. HEALTH & SAFETY CODE ANN. § 364.031 (Vernon Supp.1996)). The amendment also validates existing contracts between a municipality and a private contractor. Id.[1] Appellants agree that this legislation renders moot their first point of error pertaining to a lack of authority to require appellants to use and pay for specified garbage collection services.

## A Municipality's Enforcement Authority

■ Appellants continue to maintain that the City of Helotes had no authority to impose criminal sanctions in the form of fines for violations of Ordinance No. 81.[2] They

1. The legislature also amended the penal code to clarify that the meaning of an offense of omission includes those proscribed by municipal ordinance. See Act of February 25, 1993, 73rd Leg., ch. 3, 1993 Tex. Gen. Laws 10 (codified at TEX. PENAL CODE ANN. § 6.01 (Vernon 1994)).

2. Ordinance No. 81 states in pertinent part:

assert that the sole weapon in a city's arsenal for garbage collection enforcement is the County Solid Waste Control Act, specifically TEX. HEALTH & SAFETY CODE ANN. § 364.034(b), which states:

> To aid enforcement of fee collection for the solid waste disposal service, a public agency or county may suspend service to a person who is delinquent in payment of solid waste disposal service fees until the delinquent claim is fully paid.

TEX. HEALTH & SAFETY CODE ANN. § 364.034(b) (Vernon 1992). Since this is the only penalty provided by the Act for the conduct with which appellants expect to be prosecuted, appellants argue that the City has no statutory authority to impose a fine upon appellants to enforce payment for solid waste collection by appellants to Garbage Gobbler.[3]

■ When construing a statute or ordinance, we consider such matters as the object sought to be attained by the statute, the circumstances involved, the legislative history, the common law, former provisions, and laws on the same or similar subjects. TEX. GOV'T CODE ANN. § 311.023 (Vernon 1988).

We also may consider the consequences of a particular construction, an administrative agency's construction, and the title, preamble, or any emergency provisions of the statute. *Id.*

■ The purpose of the County Solid Waste Control Act is "to authorize a cooperative effort by counties, public agencies, and other persons for the safe and economical collection, transportation, and disposal of solid waste to control pollution in this state." TEX. HEALTH & SAFETY CODE ANN. § 364.002 (Vernon 1992). Appellants would have us follow the maxim *expressio unius est exclusio alterius* and hold that suspension of garbage collection services is the only manner in which a general-law municipality may pressure its residents to pay the monthly garbage disposal service fee. Appellants' proposed construction[4] does not promote a rational, practical mechanism to encourage a resident to pay its monthly collection fees when it does not wish to have its garbage collected by the city's contractor. Rather, it is exactly what the delinquent resident who wishes to make other arrangements for garbage disposal would seek in this case. The legislature employed the phrase "to aid en-

---

1. The necessity for the establishment of a garbage and refuse collection system in the City for sanitary and public health purposes is hereby declared....

4. It shall be unlawful for residents of the City or persons dwelling therein, or proprietors or managers of commercial establishments, to refuse to avail themselves of the garbage and refuse collection provided by the City itself or through its contractor and to refuse to pay the charges for said service established by the City Council....

13. Each violation of any of the provisions of this ordinance shall constitute a penal offense and shall be punished by the penalty of a fine of not less than twenty-five dollars ($25) nor more than one thousand dollars ($1,000) and each day that such offense continues shall be a separate offense.

3. Appellees dispute, in the alternative, appellants' standing to challenge the validity of a penal ordinance in the absence of any criminal proceeding against them. This court has previously acknowledged that "a court of equity may not enjoin the enforcement of a penal ordinance unless: (1) the ordinance is unconstitutional, or otherwise void, and (2) the enforcement of the ordinance causes irreparable injury to vested property rights." *Smith v. Copeland*, 787 S.W.2d 420, 421 (Tex.App.—San Antonio 1990, no writ)

(quoting *City of Richardson v. Kaplan*, 438 S.W.2d 366 (Tex.1969)). The issue of constitutionality was clearly raised in appellants' original petition. Whether appellants have a vested property interest in the garbage they accumulate and haul into San Antonio for disposal is not clear. Appellees cite opinions dating back 50 years that establish that garbage has no value sufficient to make it a vested property interest. In light of the recycling industry which flourishes in many communities, we would ponder whether such opinions are ready for the compost heap. That is unnecessary today, however, because we find the ordinance challenged here constitutional.

4. A leading commentator on statutory construction emphasizes that "the expression of one implies the exclusion of all others" is not a rule of law but merely an aid to determine legislative intent. A court should apply the rule with care when "factually there [is] some evidence the legislature intended its (expressio unius) application lest it prevail as a rule of construction despite the reason for and the spirit of the enactment." The maxim should be disregarded when to do so will serve the purpose for which the statute was enacted, will accomplish beneficial results, or is a necessary incidental to a power or right. *See* NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 47.25 (5th ed.1992).

forcement of fee collection" and chose the permissive "may" to authorize the suspension of garbage disposal services where a person is delinquent in paying monthly fees for this service. *Id.* at § 364.034(b). We think context and the permissive language utilized in § 364.034(b) clarifies that the public agency or county has no obligation to continue to provide garbage service to the resident whose service account is in arrears. Suspension of service is available as an encouragement to pay the delinquent bill so that delivery of the service may be restored.

We do not believe the legislature intended this "aid to enforcement" to be the only means to accomplish this goal. To reach such a conclusion, we would have to ignore other grants of authority the legislature has provided to general-law municipalities to safeguard the health and safety of its citizens. *See* TEXAS HEALTH & SAFETY CODE ANN. § 122.005 (Vernon 1992) [5]; *Texas Power & Light Co. v. City of Garland,* 431 S.W.2d 511, 517 (Tex.1968) (city's police powers extend to reasonable protection of public health and safety). The legislature and the courts have long recognized the importance of garbage disposal to the enhancement of health and safety. The enforcement of a comprehensive garbage collection plan such as the City has adopted is clearly within the police power granted to all municipalities.[6]

TEX. LOCAL GOV'T CODE ANN. § 54.001 (Vernon 1994); *cf. City of Breckenridge v. McMullen,* 258 S.W. 1099, 1101 (Tex.Civ. App.—Fort Worth 1923, no writ) (a home-rule city) (upholding ordinance which assessed $100 per day penalty against one who hauled garbage within the city without a license). Moreover, we recognize that "[p]olice power is not static or unchanging. As the affairs of the people and government change and progress, so the police power changes and progresses to meet the needs." *City of Breckenridge v. Cozart,* 478 S.W.2d 162, 165 (Tex.App.—Eastland 1972, writ ref'd n.r.e.).

We find that appellants' reliance on *Hope v. Village of Laguna Vista,* 721 S.W.2d 463 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.) is misplaced. The Village of Laguna Vista sued a resident after assessing him for maintenance dredging of a boat channel located outside the village limits. The appellate court found that the village had no authority to make such an assessment. The general-law municipality had relied on a statute which authorized cities located on or connected with the Gulf of Mexico to build canals or channels and to fund such building with negotiable revenue bonds, loans or grants. The statute was silent on assessing residents for the cost of building or maintaining the structures. More importantly, however, the statute specifically limited any such

---

5. Specifically, the City points to the statutory language "take any action necessary or expedient to promote health or suppress disease" as authorization to arrange for garbage pickup and disposal. § 122.005(a). Furthermore, the City argues that uncollected garbage or a chaotic system whereby garbage is disposed of on an irregular basis without enforcement of reasonable rules would constitute both a health hazard and a nuisance. In this respect, it notes that subsection (c) of the Health and Safety Code specifically gives a general-law municipality like Helotes the power to fine a person who refuses or fails to adhere to the rules of the health authority.

Although appellants argue that there is no proof that Ordinance No. 81 is a rule of the City's health authority, appellants have failed to establish this as fact as part of their burden in challenging the ordinance.

6. The police power is a grant of authority from the people to their government agents for the protection of the health, safety, comfort, and welfare of the public. 52 TEX. JUR. III, Municipalities § 313 (1987). It is vested in the state and flows to a general law municipality through a

legislative grant. *Id.* A general grant of such power is found at section 54.001 of the Local Government Code, which states:

(a) The governing body of a municipality may enforce each rule, ordinance, or police regulation of the municipality and may punish a violation of a rule, ordinance, or police regulation.

(b) A fine or penalty for the violation of a rule, ordinance, or police regulation may not exceed $500. However, a fine or penalty for the violation of a rule, ordinance, or police regulation that governs fire safety, zoning, or public health and sanitation, including dumping of refuse, may not exceed $2,000.

(c) This section applies to a municipality regardless of any contrary provision in a municipal charter.

The term "municipality" as used in § 54.001 encompasses general-law municipalities, home-rule municipalities, and special-law municipalities. *See* TEX. LOCAL GOV'T CODE ANN. § 1.005(3) (Vernon 1988).

expenditures to the corporate limits of the village. *Id.* at 464. This is markedly different statutory intent than the permissive "aid to enforcement" language we are asked to construe today.

### Omission or Commission?

Appellants characterize their unwillingness to utilize the city-franchised garbage collector, Garbage Gobbler, and their refusal to pay monthly fees for this service as an act of omission which was not subject to criminal sanctions at the time these ordinances were passed and this cause of action arose. They cite to § 6.01(c) of the penal code which at the time Ordinance No. 81 was enacted read:

> A person who omits to perform an act does not commit an offense unless a *statute* provides that the omission is an offense or otherwise provides that he has a duty to perform the act.

TEX. PENAL CODE ANN. § 6.01(c) (Vernon 1975).[7] Two opinions cited by appellants have construed the use of the word "statute" in § 1.03(b) as applied to § 6.01 to refer only to state and federal legislative enactments, not to municipal ordinances. *See Honeycutt v. State*, 627 S.W.2d 417, 422 (Tex.Crim.App. 1981); *Bidelspach v. State*, 840 S.W.2d 516 (Tex.App.—Dallas 1992), *writ dism'd, improvidently granted*, 850 S.W.2d 183 (Tex. Crim.App.1993). Both parties acknowledge that the effect of these cases has been abrogated by the passage of Senate Bill 146 by the 74th Legislature.

Both *Honeycutt* and *Bidelspach* concerned municipal ordinances which the appellate courts found fundamentally defective because they purported to criminalize simple negligent conduct. *See Honeycutt*, 627 S.W.2d at 422 (complaint pursuant to negligent collision ordinance failed to allege culpable mental

state); *Bidelspach*, 840 S.W.2d at 518 (indictment for failure to complete required documentation ordered dismissed).[8] The circumstances which engendered the analysis in these two cases are entirely different from our case. Appellants are not threatened with criminal sanctions for any acts or omissions due to negligence. They intend noncompliance of two city ordinances by using another means of garbage disposal not sanctioned by the City. To characterize appellants' conduct as an omission that cannot be criminalized under the penal code as it existed in 1992 is a considerable strain. Appellants admit that they intend to transport their garbage into the City of San Antonio for disposal with another collection service. That conduct is more than an omission, it is an affirmative act prohibited by the ordinance.

Appellants argue, however, that S.B. 146 cannot and does not validate what is otherwise an unconstitutional ordinance. We presume that a duly-enacted ordinance is constitutional. *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 792 (Tex.), *cert. denied*, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982); *John v. State*, 577 S.W.2d 483, 485 (Tex.Crim.App. [Panel Op.] 1979). It is our duty to give the ordinance a construction or interpretation that will render it valid, if it is reasonably possible to do so. *Swearingen v. City of Texarkana*, 596 S.W.2d 157, 161 (Tex.App.—Texarkana 1979, writ ref'd n.r.e.). To set aside a statute, it must clearly appear that its validity cannot be supported by any reasonable intendment or allowable presumption. *Wilson v. State*, 825 S.W.2d 155 (Tex.App.—Dallas 1992, pet. ref'd). We do not find the ordinance otherwise unconstitutional. Rather we find the ordinance to be authorized by section 54.001 of the Texas Local Gov't Code. *See Tweedy v.*

---

7. In 1993, the legislature passed Senate Bill 146 which deleted the term "statute" and substituted "law as defined by Section 1.07 of this code." Act of February 25, 1993, 73rd Leg., ch. 3, 1993 Tex. Gen. Laws 10 (codified at TEX. PENAL CODE ANN. § 6.01(c) (Vernon 1994)). Thus, the statute currently limits culpability where one "who omits to perform an act does not commit an offense unless a law as defined by Section 1.07 provides that the omission is an offense or otherwise provides that he has a duty to perform the act." TEX. PENAL CODE ANN. § 6.01(c) (Vernon 1994).

8. The *Bidelspach* opinion, moreover, is of limited authority because the court of criminal appeals issued an opinion when dismissing the State's petition for discretionary review that "the dismissal does not constitute endorsement or adoption of the reasoning employed by the Court of Appeals." *Bidelspach v. State*, 850 S.W.2d 183, 183 (Tex.Crim.App.1993). In addition, the case illustrates a constitutional challenge to article XI, § 5 of the Texas Constitution which only applies to home rule municipalities.

*State,* 722 S.W.2d 30, 31–32 (Tex.App.—Dallas 1986, pet. ref'd) (ordinance or resolution valid under general grant of police power).

 The Supreme Court has long recognized that "there is a strong presumption that a legislature understands and correctly appreciates the needs of its own people, that its laws are directed at problems made manifest by experience, and that its discriminations are based upon adequate grounds." *Smith v. Davis,* 426 S.W.2d 827, 831 (Tex. 1968). Where public interest is involved, individuals' rights often yield to overriding public interests and are often regulated under the police power of the state. *See, e.g., Linick v. Employers Mut. Cas. Co.,* 822 S.W.2d 297, 300 (Tex.App.—San Antonio 1991, no writ) (contractual relationship between insurer and insurance agency highly regulated under state's police powers); *Palmer v. Unauthorized Practice Comm. of the State Bar of Texas,* 438 S.W.2d 374, 376–77 (Tex.App.—Houston [14th Dist.] 1969, no writ) (non-lawyer's sale of will "forms" held to violate state's interest in regulating the practice of law for the benefit of the public welfare). Thus, a government entity often regulates the contractual relations between parties and restricts the right to contract where it is reasonably necessary to protect the general public. *Linick,* 822 S.W.2d at 300. The enforcement of such restrictions is a necessary function of municipal governments to promote the common welfare of the greater metropolitan area. Ordinance No. 81 clearly places a duty on appellants to "act," that is, to utilize the city-sanctioned garbage collection services and pay the corresponding monthly fee. The fines imposed for failure to do so fall within the inherent police powers of the city.

Appellants' first point of error is overruled as moot and the second is also overruled. The judgment of the trial court is affirmed.

TED M. AKIN, J., dissents.[9]

---

**9.** Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T