

# NUMBER 13-06-00697-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**HOWARD ADAMS D/B/A SOUTH
TEXAS WASTEWATER,**                                                 **Appellant,**

**v.**

**CITY OF WESLACO AND LIQUID ENVIRONMENTAL
SOLUTIONS OF TEXAS, L.P.,**                                         **Appellees.**

---

### On appeal from the County Court at Law No. 1
### of Hidalgo County, Texas.

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Wittig[1]
Memorandum Opinion by Justice Wittig**

---

[1] Retired Fourteenth Court of Appeals Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. TEX. GOV'T CODE ANN. § 74.003 (Vernon 2005).

Howard Adams d/b/a South Texas Wastewater (STW), appellant, complains that the trial court erroneously granted summary judgment to appellees, The City of Weslaco (Weslaco) and Liquid Environmental Solutions of Texas, L.P. (LES) (appellee/intervenor). All parties filed for summary judgment. The trial court denied STW's partial motion for summary judgment, and granted appellees' motions. STW essentially presented three claims to the trial court: (1) Weslaco's ordinance unlawfully granted an exclusive franchise to collect grease and grit; (2) STW had a property right in his existing accounts with business customers and was damaged by Weslaco's actions; and (3) STW claimed entitlement to injunctive relief. We will address each of these claims in order. We reverse and render in part, and reverse and remand the remainder of the case.

## 1. Background

STW was a contractor for multiple businesses in the City of Weslaco. It was registered by the Texas Commission of Environmental Quality as a sludge transporter, including greasetrap cleaning and disposal. STW had contracts with at least five restaurant businesses in Weslaco to provide greasetrap cleaning and grease removal services. January 4, 2005, Weslaco passed ordinance No. 2004-60, which provided for an exclusive franchise for the collection and disposal of greasetrap waste within the city. In July, Weslaco awarded an exclusive franchise under the new ordinance to Liquid Environmental Solutions of Texas, L. P. The ordinance also provided civil and criminal penalties for companies who use anyone not franchised by the city for the collection and disposal of grease. Although STW was a state regulated business, the city and its ordinance prohibited STW from performing its services with Weslaco businesses. STW challenged the city's authority to pass the ordinance in violation of state law that provides

that a person receiving solid waste disposal services from another entity, may continue to do so by showing written documentation that the person is receiving services from another entity. *See* TEX. HEALTH & SAFETY CODE ANN. § 364.034(e) (Vernon 2004).

## 2. Standard of Review

We review a summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). Summary judgment under rule 166a(c) is proper when a movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action or if the evidence conclusively establishes all elements of an affirmative defense. *See Randall's*, 891 S.W.2d at 644. Where the trial court grants the judgment without specifying the grounds, we affirm the summary judgment if any of the grounds presented are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872-73 (Tex. 2000).

A party may move for summary judgment under rule 166a(i) on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial.[2] TEX. R. CIV. P. 166a(i); *Western Investments, Inc. v. Urena,* 162 S.W.3d 547, 557 (Tex. 2005); *Duvall v. Texas Dep't of Human Servs.*, 82 S.W.3d 474, 477 (Tex. App.–Austin 2002, no pet.). Unless the nonmovant produces summary judgment evidence raising a genuine issue of material fact

---

[2] Although one appellee alludes to its no-evidence motion for summary judgment, the motions filed do not comport with that rule. *See* TEX. R. CIV. P. 166a(i) .

3

on the challenged elements, the court must grant the motion. TEX. R. CIV. P. 166a(i) & cmt. 1997; *Urena*, 162 S.W.3d at 548; *Duvall*, 82 S.W.3d at 477-78.

In reviewing a no-evidence claim, we view the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary. *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002); *Duvall*, 82 S.W.3d at 478. If more than a scintilla of evidence exists, it is legally sufficient. *Goodman*, 80 S.W.3d at 577. Evidence is more than a scintilla when it rises to the level that would enable reasonable and fair-minded people to differ in their conclusions. *Duvall*, 82 S.W.3d at 478. But when evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, it is no more than a scintilla and, in legal effect, is no evidence. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *Duvall*, 82 S.W.3d at 478.

Because the trial court's order does not specify the grounds for granting summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 217 (Tex. 2004). A no-evidence summary judgment is improperly granted if the non-movant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *Lampasas v. Spring Center, Inc.*, 988 S.W.2d 428, 432 (Tex. App.–Houston [14th Dist.] 1999, no pet.). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed material fact issue that precludes summary judgment. *Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 548-49

4

(Tex. 1985). Every reasonable inference must be indulged in favor of the non-movant and any doubt resolved in its favor. *Id.* at 549.

In construing a statute, we presume that the Legislature intended the entire statute to be effective. *See* TEX. GOV'T CODE § 311.021(2) (Vernon 2007). The law is settled that every word in a statute is presumed to have been used for a purpose; and a cardinal rule of statutory construction is that each sentence, clause, and word, is to be given effect if reasonable and possible. *Texas Workers' Compensation Ins. Fund v. Del Indus., Inc.*, 35 S.W.3d 591, 593 (Tex. 2000) (citing *Perkins v. State,* 367 S.W.2d 140, 146 (Tex. 1963)). In addition, we do not view disputed portions of a statute in isolation. *Id.* (citing *Bridgestone/Firestone, Inc. v. Glyn-Jones*, 878 S.W.2d 132, 133 (Tex. 1994)).

### 3. Authority of City

According to STW, Weslaco had no statutory authority to prohibit a person who is receiving solid waste disposal service from another entity from continuing to use that entity if it provides the city with written documentation to that effect. STW cites Texas Health and Safety Code section 364.034(e) which provides:

> (e) This section does not apply to a person who provides the public or private entity, public agency, or county with written documentation that the person is receiving solid waste disposal services from another entity. Nothing in this section shall limit the authority of a municipality to enforce its grant of a franchise for solid waste collection and transportation services within its territory.

TEX. HEALTH AND SAFETY CODE § 364.034(e) (Vernon 2004). After the effective date of the Weslaco ordinance, written documentation was submitted by five restaurant owners who invoked this provision, and notified the city that they were receiving waste collection

5

services from STW and intended to continue that service. Weslaco denied that right and told the customers they were required to use the new designated vendor.

STW argues that the plain language of the statute allows customers to select their own waste collection provider by complying with the statute. It explains that the Texas Constitution forbids cities from passing any ordinance that conflicts with a state statute. TEX. CONST. art. XI § 5. Before 2001, the Weslaco ordinance may have been proper because no statute prevented it. However, in 2001 the legislature added section (e) which then read:

> (e) This section does not apply to a person who provides the public or private entity, public agency, or county with written documentation that the person is receiving solid waste disposal services from another entity.

TEX. HEALTH & SAFETY CODE § 364.034(e) (Vernon 2002). The following legislative session, the next sentence providing for enforcement was added, which we quoted above. And as STW points out, the statute was again amended after the trial court granted summary judgment in December 2006. Effective September 1, 2007, section (e) now reads:

> (e) Except as provided by Subsections (f), (g), and (h), this section does not apply to a person who provides the public or private entity, public agency, or county with written documentation that the person is receiving solid waste disposal services from another entity. Nothing in this section shall limit the authority of a public agency, including a county or a municipality, to enforce its grant of a franchise or contract for solid waste collection and transportation services within its territory. Except as provided by Subsection (f), the governing body of a municipality may provide that a franchise it grants or a contract it enters into for solid waste collection and transportation services under this subchapter or under other law supersedes inside of the municipality's boundaries any other franchise granted or contract entered into under this subchapter.
>
> (f) Notwithstanding the other provisions of this section, a political subdivision, including a county or a municipality, may not restrict the right of an entity to

6

> contract with a licensed waste hauler for the collection and removal of domestic septage or of grease trap waste, grit trap waste, lint trap waste, or sand trap waste.

*Id.* § 364.034(e) (Vernon 2007). STW contends that before 2001, courts held that municipalities could impose a franchise for garbage collection, citing *Grothues v. City of Helotes*, 928 S.W.2d 725, 728 (Tex. App.–San Antonio 1996, writ ref'd n.r.e.) However, the 2001 change quoted above, while still allowing a city franchise, specifically permitted an opt-out of the franchise or contract when written documentation was presented showing that a person is receiving service from another entity.

STW argues that the word "franchise" does not mean "exclusive franchise." In *Ennis Waterworks*, the Texas Supreme Court held that the grant of a franchise will not be considered to be exclusive unless "given by express terms or clear implication." *Ennis Waterworks v. Ennis,* 144 S. W. 930, 934 (Tex. 1912) (an exclusive grant will not be implied unless given by express terms or by clear implication). More recently in *City of Edinburg*, the supreme court held that the franchise agreement did not give the Grantee the exclusive right to sell gas within the city. *Southern Union Co. v. City of Edinburg*, 129 S.W.3d 74, 84 (Tex. 2003). "Indeed, under Texas law, the grant could not have been an exclusive one." *Id.*

STW then distinguishes between the definition of "franchise" versus "exclusive franchise." While we agree with STW both that the city sought to grant an exclusive franchise and that there is patently a difference between an exclusive franchise and a non-exclusive franchise, the more important inquiry is the meaning of the 2003 amendment to section (e), providing that nothing should prevent a city from enforcing its franchise.

7

STW argues that we must give the statute its full meaning. It argues statutes are not to be read in isolation but should be read within the context of the entire scheme citing, *Del Industries., Inc.*, 35 S.W.3d at 593-94. Each sentence, clause and word is to be given effect if reasonable and possible. *Id.* STW uses this approach to conclude that language allowing a city to enforce its non-exclusive franchises is entirely consistent with allowing persons to chose their own other entity for solid waste services. We find some merit in this approach.[3]

Appellee Weslaco counters that the critical issue is whether or not section (e) overrides prior case law and Attorney General opinions. We agree. Weslaco further argues that the use of the word "franchise" does not necessarily exclude the city from awarding an "exclusive franchise." The police powers of a municipality give them the option of awarding a franchise or an exclusive franchise. The power to issue an exclusive franchise is merely a sub-set of a cities power to issue franchises. The second sentence of section (e) "overrides this opt out provision completely." This is not true for governmental agencies, other than cities, according to this appellee. Weslaco goes on to argue that section (e) is "non-ambiguous and perfectly harmonized as plainly read." Therefore, it concludes, a resort to legislative history is not required, citing *Alex Sheshunoff Management Services., L.P. v. Johnson*, 209 S.W.3d 644, 651-52 (Tex. 2006). The *Johnson* case states:

> Ordinarily, the truest manifestation of what legislators intended is what lawmakers enacted, the literal text they voted on. This enacted language is what constitutes the law, and when a statute's words are unambiguous and

---

[3] We do not agree with appellant that a city may not award an exclusive franchise under some circumstances, as we discuss below.

yield a single inescapable interpretation, the judge's inquiry is at an end. *See McIntyre v. Ramirez*, 109 S.W.3d 741, 745, 46 Tex. Sup. Ct. J. 854 (Tex. 2003). Wherever possible, we construe statutes as written, but where enacted language is nebulous, we may cautiously consult legislative history to help divine legislative intent. *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493, 44 Tex. Sup. Ct. J. 675 (Tex. 2001).

*Id.* Mindful of this admonition, we observe that the prior legislative history, while perhaps somewhat more favorable to appellant, is not dispositive.

Weslaco concludes that nothing in section 364.034 limits the authority of a municipality "to grant a franchise, any type of franchise." However, this argument overlooks the first sentence of section (e) allowing an opt-out. Even more to the point, the disputed second sentence of section (e) addresses "the authority of a municipality *to enforce* its grant of a franchise" (emphasis added). *See* TEX. HEALTH & SAFETY CODE § 364.034(e). The actual granting of a franchise is not discussed in the second sentence relied upon by appellees.

Appellee LES argues that case law has long upheld a municipality's right to regulate and franchise garbage collection. They too cite *Grothues,* 928 S.W.2d at 729. "The legislature and the courts have long recognized the importance of garbage disposal to the enhancement of health and safety. The enforcement of a comprehensive garbage collection plan such as the City has adopted is clearly within the police power granted to all municipalities." *Id.* (citing TEX. LOCAL GOV'T CODE ANN. § 54.001 (Vernon 1994)). While all parties rely on this case, it is important to recognize its actual holding:

We think context and the permissive language utilized in § 364.034 (b) clarifies that the public agency or county has no obligation to continue to provide garbage service to the resident whose service account is in arrears. Suspension of service is available as an encouragement to pay the delinquent bill so that delivery of the service may be restored.

9

*Id.* Furthermore, *Grothues* patently addresses neither the legislature limitations added by section (e) in 2001, nor its further modifications in 2003 and 2007. We also note that the holding deals once again with enforcement, rather than the grant of a franchise.

Appellees also cite *Browning-Ferris, Inc. v. Leon Valley*, 590 S.W.2d 729, 732 (Tex. Civ. App.–San Antonio 1979, writ ref'd n.r.e.) (allowing exclusive contracts for the disposal of sewage over a fixed period of years, as well as ordinances having the same purposes, sustained as a lawful exercise of the police power). Generally, to the same effect is an Attorney General Opinion cited by one appellee: *See* TEX. ATTY GEN. OP. No. DM-401 (1996) (city may grant an exclusive franchise and contract to a private company to collect, haul, and dispose of all solid waste material within the city) (citing *Browning-Ferris, Inc.*, 590 S.W.2d at 732). Although these authorities address the grant of a franchise, the legislative limitations in question are not discussed.

LES observes "When read together, sentence two seemingly confers back to municipalities' [sic] rights which sentence one seemingly takes away." LES suggests that the first sentence opt-out of section (e) does not apply to municipalities. However, the opt-out sentence applies to "public agencies." TEX. HEALTH & SAFETY CODE § 364.034(e). And public agency is defined elsewhere in the act to specifically include municipalities. *Id.* § 364.003(3) (Vernon 2004).

LES also argues that the second sentence of section (e) was passed as part of HB 2036 to expand a city's authority to enter into a contract with another political unit. Under the bill, such a contract may provide authority to the other political subdivision to refuse to provide services to a customer who is delinquent. Then, as part of HB 2036, the second sentence

10

was added to section 354.034(e). Thus, LES again urges that the opt-out provision of the first sentence applies only to non-municipal agencies. We reject this argument because the plain reading of the statute provides otherwise. *Del Indus., Inc.,* 35 S.W.3d at 593 (a cardinal rule of statutory construction is that each sentence, clause and word is to be given effect if reasonable and possible).

Both Weslaco and LES discuss the lack of competitive bidding. We do not believe those arguments are significantly material to the questions at hand. In any event, we agree with appellees that a competitive bid for the franchise in question was not required. *See* TEX. GOV'T CODE §§ 252.021, 252.022(a)(2) (Vernon 2005).

All parties seemingly agree that Weslaco had both statutory and inherent police power to grant a franchise for garbage or grease collection. However, as STW aptly notes, home rule municipalities are expressly prohibited from doing anything that would interfere with a statute passed by the legislature. TEX. CONST. art. XI, § 5 (no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of the State.)

### 4. Section (e)

The first sentence of section (e), unequivocally allows a person to opt-out of solid waste collection by a public agency with written documentation that the person is receiving solid waste disposal service from another entity. TEX. HEALTH & SAFETY CODE § 364.034(e). However, the sentence goes further. It states: "This section does not apply" to such a person already receiving the service. In other words, none of the other portions of section 364.034 apply to the opt-out provision. "Ordinarily, the truest manifestation of what legislators

11

intended is what lawmakers enacted, the literal text they voted on." *Johnson*, 209 S.W.3d 644, 651-52. "This enacted language is what constitutes the law, and when a statute's words are unambiguous and yield a single inescapable interpretation, the judge's inquiry is at an end." *Id.* Yet, all concerned want to read into the second sentence of sub-section (e), either ambiguity or a self-serving result.

In construing a statute, we presume that the legislature intended the entire statute to be effective. *See* TEX. GOV'T CODE § 311.021(2). We do not view disputed portions of a statute in isolation. *Bridgestone/Firestone, Inc.*, 878 S.W.2d at 133. The second sentence therefore must be read in such a way that the entire subsection is effective, which, perforce, includes the opt-out. As LES points out, the second sentence of section (e) was passed as part of HB 2036 to expand a city's authority to enter into a contract with another political unit and to enforce its collections by refusing to provide services to a delinquent customer. Thus, a city was given additional power to provide services, and additional power to collect or enforce its franchises.

We reiterate in this context: "Nothing in this section shall limit the authority of a municipality to enforce its grant of a franchise for solid waste collection and transportation services within its territory." TEX. HEALTH & SAFETY CODE § 364.034 (e). The two sentences then should be read together to permit an opt-out from the franchise and to allow for enforcement of franchises. This is consistent with LES's argument that the new provision was added to expand the city's authority to enter into a contract with another political unit and also be able to enforce those new alliances. This action was not previously allowed under at least one Attorney-General Opinion. *See* TEX. ATTY GEN. OP. No. JC-0219 (2000) (public agency is not authorized to suspend service to delinquent person for services provided by

12

another agency or county).  Thus, the enforcement language of sentence two was added to address this lack of such authority.

As we noted above, the second sentence of section (e) does not address the granting of a franchise.  The first sentence implicitly addresses the grant of a franchise or rather an exception to the grant of a franchise.  It provides the entire section, including the granting of franchises, does not apply to the opt-out.

Our view is bolstered by both the state constitution and subsequent legislation.  Our constitution disallows monopolies.  *See* TEX. CONST. art. I, § 26.  "Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed, nor shall the law of primogeniture or entailments ever be in force in this State." *Id.*; *see also City of Edinburg*, 129 S.W.3d at 84.  The application of this principle harkens back at least to *Edwards County v. Jennings*, 35 S.W. 1053, 1054 (Tex. 1896).  "[W]e are of opinion that the agreement of the county to grant to Jennings 'an exclusive right of way to lay piping for supplying the town of Rocksprings, Edwards County, Texas, with water tends to create a monopoly, is violative of the Constitution, illegal and void." *Id.*  However, we are also mindful of the line of cases that seemingly allow some leeway from this constitutional prohibition under the police powers of a city.  *See Grothues,* 928 S.W.2d at 731 ("Where public interest is involved, individuals' rights often yield to overriding public interests and are often regulated under the police power of the state.");  *City of Brackenridge v. Cozart,* 478 S.W.2d  162, 65 (Tex. App.–Eastland 1972, writ ref'd n.r.e.); *see also San Antonio v. San Antonio Irr. Co.*, 118 Tex. 154, 164-65 (Tex. 1929) (two things were provided for: (a) means of remedying bad conditions arising out of the present arrangement or as incident to growth of the City's

13

population, etc.; and (b) avoidance of the monopolistic conditions denounced by constitution, if applicable to sewage contract).

We presume that a duly-enacted ordinance is constitutional. *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 792 (Tex. 1982). It is also presumed that a statute is constitutional, that the entire statute is intended to be effective, that a just and reasonable result is intended, that a result is feasible of execution, and that public interest is favored over any private interest. *See* TEX. GOV'T CODE ANN. § 311.021 (Vernon 1988) (Code Construction Act). At the same time, a statue that deprives a person of a common-law right "will not be extended beyond its plain meaning or applied to cases not clearly within its purview." *Satterfield v. Satterfield*, 448 S.W.2d 456, 459 (Tex. 1969).

Thus, the tension between the constitutional prohibition against monopolies and the police powers of a city to regulate garbage collection are alleviated by our interpretation of section (e). We read the two sentences together to allow an opt-out and still allow *enforcement* of a duly authorized franchise, which by the very statutory limitation of its legislative grant, may not disallow an opt-out.

Finally, STW calls our attention to important amendments to section (e). We may look to later amendments for guidance in statutory interpretation. *See Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 17 (Tex. 2000) (recent legislative actions also strongly suggest that the Commissioner's jurisdiction to consider this dispute was not intended to be exclusive). Conversely, legislative inaction following judicial interpretation has been found by the Texas Supreme Court to evidence legislative adoption of such interpretation. *Robinson v. Central Texas MHMR Ctr.*, 780 S.W.2d 169, 171 (Tex. 1989) (citing *Allen Sales and Servicenter, Inc.*

*v. Ryan*, 525 S.W.2d 863, 866 (Tex. 1975)). The trial court granted summary judgment disallowing the statutory opt-out in December, 2006. When the legislature met the next month, section (e) was again amended to reiterate and better clarify that a political subdivision may not restrict the right of an entity to contract with a licensed grease and grit trap waste hauler.

The 2007 legislature repeated most of the language of section (e), but added an indisputable section (f):

> (f) Notwithstanding the other provisions of this section, a political subdivision, including a county or a municipality, may not restrict the right of an entity to contract with a licensed waste hauler for the collection and removal of domestic septage or of grease trap waste, grit trap waste, lint trap waste, or sand trap waste.

TEX. HEALTH & SAFETY CODE § 364.034(f) (Vernon 2007). The amended sub-section maintains the first sentence of section (e) providing for an opt-out but also excepts new subsections (f), (g) and (h). *Id.* §§ (e), (f), (g), (h). The second sentence also remains and still allows not only a city to enforce its franchises, but also a public agency and a county to enforce its grant of a franchise or contract. *Id.* § (e). Finally, the legislature further explicitly allows non-franchised septic and other waste collection and removal. *Id.* § (f).

We conclude that the trial court improperly granted Weslaco's and LES's motions for summary judgment on this issue and improperly denied STW's partial motion for summary judgment on this issue.

### 5. Vested Property Right

We next discuss whether Weslaco's abrogation of LES's business constitutes a taking of its property rights. The trial court also granted both Weslaco and LES's motions for

summary judgment on STW's inverse condemnation claims. Whether a particular factual situation constitutes a taking is generally a question of law. *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001). The takings clause prohibits the State from taking a person's property under its sovereign powers without adequate compensation unless by such person's consent. *Id.* (citing TEX. CONST. art. 1, § 17). To establish a takings claim, an entity must prove (1) the State intentionally performed certain acts, (2) that resulted in a "taking" of property, (3) for public use. *Id.* To show a taking under article I, section 17, of the Texas Constitution, STW "must show that a governmental actor acted intentionally to take or damage property for a public use." *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007) (citing *General Servs. Comm'n* 39 S.W.3d at 598-99). "Taking," "damaging," and "destruction" of one's property are three distinct claims arising under Article I, Section 17. *Steele v. City of Houston*, 603 S.W.2d 786, 789-91 (Tex. 1980). The term "taking" has become used as a shorthand to refer to all three types of claims. *City of Dallas v. Jennings*, 142 S.W.3d 310, 313 (Tex. 2004). Here, although we similarly use the phrase "takings claim," we are specifically addressing the claim of damage or appropriation of STW's business and property rights. *See id.*

Weslaco and LES both maintain that STW has no vested right to collect solid waste within a city. They cite *Alford v. Denton*, 546 S.W.2d 672, 674 (Tex. Civ. App.–Fort Worth 1977, writ ref'd n.r.e.). *Alford* stands for the proposition that governmental action which causes or results in an individual's loss of business, standing alone, does not constitute a constitutional "taking" of property which gives rise to any right to receive compensation from the sovereign. *Id.* This holding is based upon the notion that "a person operating a business

16

in, under or over the streets, alleys and other public places within an incorporated municipality without a franchise has no property right in the continued use of such premises for conducting his business." *Id.*

*Alford* is distinguishable because the city merely went into competition with Alford. *Id.* "We think it is clear from the record that the city council is fully authorized, not only by the general laws referred to above, but by this article of the city charter, to issue the bonds for the purpose of constructing a plant of its own, although it may result in competition with a plant which is already performing such services for the inhabitants of said city. . . ." *Id.* The City of Denton did not prohibit Alford from continuing his business as is the case with STW. Nor was that city's action contrary to legislative dictates.

It is also interesting to note that *Alford* reiterated the principle that under the state Constitution, art. 1, § 26, a city cannot grant a private corporation an exclusive franchise to furnish water, light, and power or gas to the inhabitants of such city for a given number of years. *Id.* at 674. "Even though a franchise has been granted, the city can nevertheless grant a similar franchise for the operation of a similar public utility to another corporation or can construct its own plant and operate it in competition with the company to which such a franchise has been granted." *Id.*

Appellees also cite *San Antonio v. Bee-Jay Enterprises, Inc.*, 626 S.W.2d 802, 804-05 (Tex. App.– San Antonio 1981, no writ). *Bee-Jay* holds that there was no vested property right in the use of the streets and alleys of that portion of the City of San Antonio known as Gateway Terrace Subdivision. *Id.* There being no vested property right to use the streets for its commercial venture, Bee-Jay failed to show irreparable injury to property and was thus

not entitled to injunctive relief. *Id.* Bee-Jay did not even allege any vested property rights in the use of the streets, but rather an impairment of its contractual obligation. *Id.* San Antonio had filed suit to enjoin Bee-Jay from operating a private unfranchised residential garbage service within the city limits, which was denied. *Id.* In July, 1981, San Antonio enacted an ordinance which required a franchise in order to conduct business on public streets except for certain private, residential garbage collection service. *Id.* *Bee-Jay* in turn relied upon *West Texas Utilities Co. v. City of Baird,* 286 S.W.2d 185, 186-87 (Tex.Civ.App.–Eastland 1956, writ ref'd n.r.e.), holding that the electric utility had no right, without a franchise, to use the streets and alleys of any incorporated city or town in the operation of its business. *Id.* Appellees also cit*e Baird*. Electric utilities may construct, maintain and operate lines over, across and along streets and alleys within incorporated cities and towns only with the consent and under the direction of the governing body of the municipality. *Id.* (citing TEX. REV. CIV. STAT. art. 1436a, 1955). "Its franchise having expired, the utility company no longer had a right to use the streets and alleys, as such right, or the determination of such right, rested with the legislative body of that city." *Id.*

Baird, however, has limited value because it was construing the powers of cities with populations under 5000, as well as the then existing public utility statues, specifically requiring consent and direction within incorporated cities.[4] *Id.* It is also noteworthy that *Baird* in turn cites *Ennis Waterworks* 144 S. W. at 934, holding that a water company had a natural and inherent right not subject to license (and not required to be granted by the city) to sell water

---

[4] Within incorporated cities and towns such corporations may construct, maintain and operate lines over, across and along streets and alleys with the consent and under the direction of the governing body of the municipality. TEX. REV. CIV. STAT. ANN. art. 1436a.

18

to the citizens of Ennis.  We observe that *Baird* does not support appellees' position and is tenuous support for the cited authority of *Bee Jay*.  *See Bee-Jay Enterprises, Inc.*, 626 S.W.2d at 805.

Here, STW alleges an unlawful taking and actual physical appropriation of property and/or interference with the right to use and enjoy its property and property rights.  Although STW had no franchise or consent, none was required before Weslaco's ordinance.  And at the time of the ordinance, STW had express legislative right to continue its business as we discussed above.

Both appellees argue that contractual obligations are not impaired under the "takings clause" by a statute in effect when that contract was made.  They cite *Brownsville v. Public Utility Commission.,* 616 S.W.2d 402, 410 (Tex. Civ. App.–Texarkana 1981, writ ref'd n.r.e.), holding that obligations of a contract are not impaired, within the meaning of the constitutional provisions, by a statute in effect when the contract was made.  This argument begs the question of whether property rights were impaired by a cities' taking in violation of a state statute.  STW itself had a statutory right both when its contracts were made and thereafter when the ordinance was passed.

Weslaco points out that STW has no property right by virtue of its state permit.  The Texas Administrative Code provides: (b) a permit issued within the scope of this subchapter does not convey any property rights of any sort, nor any exclusive privilege, and does not become a vested right in the permittee; and (c) the issuance of a permit does not authorize any injury to persons or property or an invasion of other property rights, or any infringement of state or local law or regulations. 30 TEX. ADMIN. CODE § 305.122(b),(c) (Vernon 1996),  We do not disagree.  Rather, STW property rights arise from its business ownership rights, its

19

commercial contracts, and explicit statutory authority. *See* TEX. HEALTH & SAFETY CODE § 364.034(e).

LES also cites *Linick v. Employers Mutual Casualty Co.*, 822 S.W.2d 297, 300 (Tex. App.– San Antonio 1991, no writ). *Linick* states that where the public interest is involved, individuals' rights often yield to overriding public interests and are often regulated under the police power of the State. *Id.* Contractual relations between parties can be regulated and freedom of contract restricted to a degree that is necessary for the reasonable protection of the public. *Id.* LES argues that just because there is a state statute on a particular subject, that does not automatically preempt that subject from city regulation, citing *Gordon v. State*, 757 S.W.2d 496, 502 (Tex. App.–Houston [1st Dist.] 1988, pet ref'd). "Local regulation, ancillary to and in harmony with the state legislation, is acceptable." *Id.* A statute and an ordinance will not be held repugnant to each other if a reasonable construction upholding both can be reached. *Id.* However, *Gordon* also holds, "An ordinance that is inconsistent with state legislation is impermissible." *Id.* (citing *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 796 (Tex. 1982)).

Takings are classified as either physical or regulatory takings. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933-35 (Tex. 1998). Physical takings occur when the government authorizes an unwarranted physical occupation of an individual's property. *Id.* (citing *Yee v. City of Escondido*, 503 U.S. 519, 522 (1992)). "A compensable regulatory taking can also occur when governmental agencies impose restrictions that either (1) deny landowners of all economically viable use of their property, or (2) unreasonably interfere with landowners' rights to use and enjoy their property." *Id.* (citing *Lucas v. South Carolina*

20

*Coastal Council*, 505 U.S. 1003, 1015-19 & n.8, (1992); *Taub v. City of Deer Park*, 882 S.W.2d 824, 826 (Tex. 1994); *City of Austin v. Teague*, 570 S.W.2d 389, 393 (Tex. 1978)).

Property is taken if it is transferred from one owner to another. *Steele v. Houston*, 603 S.W.2d 786, 789 (Tex. 1980). Decisions by the Texas Supreme Court have broadly applied the underlying rationale to takings by refusing to differentiate between an exercise of police power, which excused compensation, and eminent domain, which required compensation. *Id.* In *Steele,* the court noted an earlier opinion that municipal action by impressing a scenic easement upon one's property entitled the landowner to damages under article I, section 17, holding that the city had "singled out plaintiffs to bear all the costs for the community benefit without distributing any cost among the members of the community." *Id.* (citing *Teague,* 570 S.W.2d at 393).

A compensable regulatory taking of property occurs when a governmental agency imposes restrictions that: (1) do not substantially advance legitimate state interests; or (2) either (a) deny property owners all economically viable use of their property, or (b) unreasonably interfere with property owners' rights to use and enjoy their property. *Mayhew,* 964 S.W.2d at 935. A restriction denies the property owner all economically viable use of the property or totally destroys its value if the restriction renders the property valueless. *Id.* Determining whether all economically viable use of a property has been denied entails an analysis of whether value remains in the property after the governmental action. *Id.* A more difficult determination is whether the government has unreasonably interfered with a landowner's right to use and enjoy property; it requires a consideration of the economic

impact of the regulation and the extent to which the regulation interferes with distinct "investment-backed expectations." *Id.* at 935 n5.

A regulation may go so far in imposing public burdens on private interests as to require compensation. *Hallco Tex., Inc. v. McMullen County*, 221 S.W.3d 50, 56 (Tex. 2006). In deciding whether regulatory action goes "too far," we are to carefully weigh "all the relevant circumstances," including: (1) "'the economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action.""[5] *Id.* (citing *Sheffield Dev. Co. v. City of Glenn Heights,* 140 S.W.3d 660, 670-72 (Tex. 2004) (quoting *Connolly v. Pension Benefits Guar. Corp.*, 475 U.S. 211, 225, (1986) (quoting *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978))). The extent of the governmental intrusion may be a question for the trier of fact, but whether the facts constitute a taking is a question of law. *Id.*

In determining the economic impact of the regulation, we compare the value that has been taken from the property to the value that remains in the property. *Mayhew*, 964 S.W.2d at 935-36. We are not to consider the loss of anticipated gains or potential future profits. *Id.* at 936. In considering the investment-backed expectations, the existing and permitted uses of the property are the "primary expectation" of the property owner that is affected by the regulation. *Id.*

In *Sheffield,* the Texas Supreme Court discusses some of the ramifications of the United State Supreme Court's holding in *Penn Central*. *Sheffield Dev. Co.,* 140 S.W.3d at

---

[5] These three principles are referred to as the *Penn Central* factors.

672-73. The United States Supreme Court has cautioned that the *Penn Central* factors do not comprise a formulaic test. *Id.* "Penn Central does not supply mathematically precise variables, but instead provides important guideposts that lead to the ultimate determination whether just compensation is required." *Id.* Furthermore, the three *Penn Central* factors are not the only ones relevant in determining whether the burden of regulation ought "in all fairness and justice" to be borne by the public. *Id.* Whether a regulatory taking has occurred, the United States Supreme Court has said, "depends on a complex of factors including" the three set out in *Penn Central*. *Id.* The analysis "necessarily requires a weighing of private and public interests" and a "careful examination and weighing of all the relevant circumstances in this context." *Id.* In considering regulatory takings issues, "we consider all of the surrounding circumstances" in applying "a fact-sensitive test of reasonableness." *Id.*

Applying a fact sensitive test is problematic in this summary judgment context. Our review is necessarily limited to the pleadings and few facts presented by the parties. We are further inhibited by the implicit holding of the trial court that STW was foreclosed from claiming any property right was lost by regulatory taking because the Weslaco ordinance effecting STW was a valid exercise of police power.[6] And, as appellees argue, a city is not required to make compensation for losses occasioned by the proper and reasonable exercise of its police power, citing *College Station v. Turtle Rock Corp.,* 680 S.W.2d 802, 804 (Tex. 1984). However, an inverse condemnation may occur when the government physically appropriates, or unreasonably interferes with a property owners right to use and enjoy the property, such as by restricting access or denying a permit for development. *See Westgate,*

---

[6] If Weslaco's abrogation of STW's property interests had not been precluded by statute, we would agree there was no taking.

*Ltd. v. State,* 843 S.W.2d 448 (Tex. 1992) (citing *Teague*, 570 S.W.2d at 393; *City of Waco v. Texland Corporation*, 446 S.W.2d 1 (Tex. 1969); *DuPuy v. City of Waco,* 396 S.W.2d 103 (Tex. 1965)); *see also City of Dallas v. Blanton,* 200 S.W.3d 266, 274 (Tex. App.–Dallas 2006, no pet.) (regulatory taking may also occur when the governmental restriction unreasonably interferes with the property owner's right to use and enjoy the property).

The United States Supreme Court has admitted, "cases attempting to decide when a regulation becomes a taking are among the most litigated and perplexing in current law." *Sheffield*, 140 S.W.3d at 671. The Texas Supreme Court has called these legal battlefields "a 'sophistic Miltonian Serbonian Bog.'" *Id.* (citing *Teague*, 570 S.W.2d at 391, 21 (quoting *Brazos River Auth. v. City of Graham*, 354 S.W.2d 99, 105 (Tex. 1962); *see also* JOHN MILTON, PARADISE LOST 49, bk. II, ll. 592-94 (Scott Elledge ed., Norton & Co. 1993)(1674)).

Notwithstanding, small beacons of clarity have been identified. "[A]t least two discrete categories of regulatory action as compensable without case-specific inquiry." *Sheffield*, 140 S.W.3d at 671. One is where regulation "compels the property owner to suffer a physical 'invasion' of his property." *Id.* "The direct, physical effect on property, though short of government possession, makes the regulation categorically a taking." *Id.* Another is "where regulation denies all economically beneficial or productive use of land." *Id.* To deprive an owner of all economically beneficial use of land virtually deprives him of the land itself. *Id.* But this is "limited to 'the extraordinary circumstance when no productive or economically beneficial use of land is permitted'" and "the landowner is left with a token interest." *Id.*

24

"Physical possession is, categorically, a taking for which compensation is constitutionally mandated . . . ." *Id.* at 669-70 (citing *Tahoe-Sierra Pres. Council Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322, (2002)). Lesser interferences, however, may also result in a taking. *Id.* These types of regulatory actions require an "essentially ad hoc, factual inquir[y] . . . ." *Id.* at 672

In *Wichita Falls* the intermediate court stated:

> The establishment of public highways being primarily a function of government belonging to the state, the right to establish them resides primarily in the Legislature, and, in the absence of constitutional restrictions, the Legislature may exercise that right direct or delegate it to a political subdivision of the state, or to such other agency or instrumentality, general or local in its scope, as it may determine. The exercise of this right by a political subdivision of the state, or by local officers, is founded upon statutory authority therefor[e]. The Legislature may exercise possession of public roads and control over them, by and through such agencies as it may designate."

*Wichita Falls v. Real Estate Trust*, 135 S.W.2d 736, 738 (Tex. Civ. App.–Fort Worth 1939, writ dis'm.). In this case, Weslaco sought to grant an exclusive right to haul grease and grit within its territorial limits. Absent legislative limitations, Weslaco had such a right. *City of Breckenridge v. McMullen*, 258 S.W. 1099, 1102 (Tex. Civ. App.–Fort Worth 1923, no writ). In 2001, this ability was limited by the legislature by the addition of section (e) of the Health and Safety Code. Tex. Heal & Safety Code § 364.034(e). As we noted above, the 2003 amendment to section (e) did not destroy the opt-out provision made law in 2001. *Id.* Weslaco is without authority to pass any ordinance that conflicts with a state statute. Tex. Const. art. XI, § 5.

STW pled that the passage and enforcement of Weslaco's ordinance was an unlawful taking. STW alleged an unlawful taking by actual physical appropriation of property and/or

25

interference with the right to use and enjoy its property. Further, it had property rights in its contracts with existing customers, which property was taken without just compensation. *See United States Trust Co. v. New Jersey*, 431 U.S. 1, 19 n.16 (1977) (contract rights are a form of property and as such may be taken for a public purpose provided that just compensation is paid); *see also Lynch v. United States*, 292 U.S. 571, 579 (U.S. 1934) (valid contracts are property, whether the obligor be a private individual, a municipality, a State or the United States). These rights are also alleged to include rights to solicit new business and to maintain and service existing customers.

We find that STW pled and presented some evidence of a potentially valid claim for inverse condemnation. *See Duvall*, 82 S.W.3d at 478. Two bases for this conclusion predominate. First, a regulatory action is compensable without case-specific inquiry when a regulation deprives a property owner of all economically beneficial or productive use of the property; such action "makes the regulation categorically a taking." *Sheffield,* 140 S.W.3d at 671. Second, in deciding whether regulatory action goes "too far," we carefully weigh "all the relevant circumstances," including: (1) "'the economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action.'" *Hallco Tex., Inc.*, 221 S.W.3d at 56. According to the pleadings and limited proof of the summary proceeding, the economic impact on STW was to shut down a going concern in Weslaco, interfere with STW's business operations in Weslaco, and render its legitimate contracts void. *See id.; see also Nixon*, 690 S.W.2d at 548-49 (every reasonable inference must be indulged in favor of the non-movant and any doubt resolved in its favor).

26

In considering the investment-backed expectations, the existing and permitted uses of the property are the "primary expectation" of the property owner that is affected by the regulation. *Mayhew*, 964 S.W.2d at 935-36. STW had an existing on-going business in Weslaco, and was permitted to exercise its property rights under state law. Thus, the city defeated the primary expectation of STW. *See Goodman*, 80 S.W.3d at 577; *Nixon*, 690 S.W.2d at 548-49.

The character of the governmental action was to shut down STW's Weslaco business in violation of both a state statute and the Texas Constitution. *Sheffield,* 140 S.W.3d at 672; TEX. CONST. art. § 17;*see* TEX. CONST. art. XI, § 5. Appellees argue that Weslaco's action was a legitimate exercise of police power. We have already found otherwise. Furthermore, even a finding of a significant and legitimate public purpose is not, by itself, enough to justify the impairment of contractual obligations. *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 505 (U.S. 1987). "A court must also satisfy itself that the legislature's "adjustment of 'the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption.'" *Id.* The legislature made the dominant grant and adjustment of respective rights and responsibilities. The city then, in spite of statutory constraints, abrogated the property rights of STW. *See Alamo Carriage Service, Inc. v. San Antonio*, 768 S.W.2d 937, 940 (Tex. App.–San Antonio 1989, no writ) (property interests are created and defined by state law); *see also United States Trust Co.*, 431 U.S. at 19 n.16.

We conclude that Weslaco's regulatory action goes "too far" in depriving STW of its property rights to carry on its state regulated business specifically authorized by statute. *See*

*Hallco Tex., Inc.,* 221 S.W.3d at 56. Weslaco unreasonably interfered with STW's right to use and enjoy its property. *Id.* A regulation may go so far in imposing public burdens on private interests as to require compensation. *Sheffield,* 140 S.W.3d at 672. Finally, Weslaco appropriated the business and property of STW for its own public use. TEX. CONST. art. I, § 17; *see Dallas County Flood Control Dist. v. Benson*, 306 S.W.2d 350, 351 (Tex.1957). In effect, the city reassigned STW's business and contracts to LES, who in turn rewarded Weslaco by returning ten percent of its proceeds to the city's coffers.

We sustain STW's second issue, and find that the trial court improvidently granted the motions for summary judgment by Weslaco and LES.

## 6. Injunction

We are not informed of Weslaco's action following the 2005 legislative amendments, more explicitly allowing STW's right to do its business within the city. We would presume that the ordinance was amended to conform with state law. Only if it failed or refused to comply with state mandates, would the potential for any injunction remain. In such a case, courts of equity may, in a proper case, enjoin the enforcement of a criminal statute or ordinance when it is unconstitutional or otherwise void and when its enforcement invades a vested property right which will result in irreparable injury. *See Bee-Jay Enterprises, Inc.*, 626 S.W.2d at 804; *State v. Logue*, 376 S.W.2d 567, 569 (Tex. 1964); *Crouch v. Craik*, 369 S.W.2d 311 (Tex. 1963).

## 7. Conclusion

The trial court improperly granted the motions of summary judgment filed by Weslaco and LES on all three claims. We reverse and remand on these issues. It improperly denied

28

STW's motion for partial summary judgment on the first issue.   We reverse and render on that issue.   Accordingly, we remand for further proceedings consistent with this opinion.

DON WITTIG
Justice

Memorandum Opinion delivered and
filed this 23rd day of April, 2009.