COURT OF APPEALS/
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| GREG ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF TEXAS, | § | No. 08-21-00149-CV |
| | § | Appeal from the |
| Appellant, | § | County Court at Law No. 7 |
| v. | § | of El Paso County, Texas |
| THE CITY OF EL PASO, | § | (TC#2021-DCV-2805) |
| Appellee. | § | |

## DISSENTING OPINION

It bears repeating what this case *is* about and what it is *not* about. To a great extent, it involves the interpretation of differing statutory schemes, two focusing on protecting public health and safety, generally, as well as within a local jurisdiction, while a third focuses more expansively, but in shorter duration, on protecting the life and property of Texas residents during and following a natural or man-made disaster. *See generally* TEX. HEALTH & SAFETY CODE ANN. §§ 81.001–81.016 (the Communicable Disease Prevention and Control Act); *id*. §§ 121.001–121.103 (the Local Public Health Reorganization Act); *see also* TEX. GOV'T CODE ANN. §§ 418.001–418.307 (the Texas Disaster Act of 1975).

In terms of the parties involved, on one side appears the City of El Paso, but not because it exercised municipal authority by enacting an ordinance, or because the mayor of the city issued a

disaster proclamation or order. Rather, the City appears solely in support of an order originating directly from the Local Health Authority of the City/County, appointed to his position under Chapter 121 of the Texas Health & Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 121.021 ("A health authority is a physician appointed under this chapter to administer state and local laws relating to public health within the appointing body's jurisdiction."). On the other side of the suit, Governor Greg Abbott appears in support of one of a series of his executive orders issued to meet "the dangers to the state and people," as presented by the COVID-19 disaster. *See* TEX. GOV'T CODE ANN. § 418.011(1) (defining the responsibilities of the Governor when a statewide disaster is declared).

Relying on these statutory authorities, and regardless of their positions, the governmental actors involved may only assert authority over El Paso County residents as permitted by the grant of police power of the state as has been given by its people. *See Williams v. State*, 176 S.W.2d 177, 182 (Tex. Crim. App. 1943) ("It follows that legislation which is necessary or appropriate to protect the general welfare of the people, and that is reasonable in its operation and effect, is a valid exercise by the Legislature of its police power."); *Grothues v. City of Helotes*, 928 S.W.2d 725, 731 (Tex. App.—San Antonio 1996, no writ) ("Where public interest is involved, individuals' rights often yield to overriding public interests and are often regulated under the police power of the state."). Yet, because there is a jurisdictional overlap between the officials involved here, we are asked to resolve the conflict presented by the case. Regardless of the complexity of this dispute, it should remain clear about what the case is *not* about. As an intermediate appellate court, we are not asked to decide, nor are we equipped to decide, whether either one of the health or disaster orders at issue is superior to the other in terms of its policy judgment or effectiveness in achieving

2

a desired result. At best, we are only capable of determining whether one or the other remains true to the grant of authority expressed by the relevant statutory scheme.

What the case *is* about is framed by the dueling orders at issue. The narrow issue presented is whether a local health authority may issue an order compelling indoor masking (or face coverings) in conflict with a like, but opposite order by the Governor, which encourages but does not compel such wearing of a face covering, and further prohibits any inconsistent local orders. Despite the narrow framing of the contested issue, the majority opines on broader questions of the Governor's authority under the Texas Disaster Act as compared to similar but local powers granted to a home-rule city. But without involvement of the mayor or the issuance of a city ordinance, I contend the case does not involve the city's home-rule authority. [1] Because I view the majority decision as overly broad and relying on distinguishable authorities, I disagree with its conclusions. Respectfully, I dissent.

---

[1] Responding to the majority's argument on the framing of the issue, I agree the parties argue far-ranging questions about such matters including the division of power between a city and a governor during a declared, state-wide disaster. In briefing, they ask this Court to decide whether several powers given the Governor under the terms of the Texas Disaster Act violate the constitutional separation of powers doctrine. Yet, as I view the case, the parties' desire to have this Court address such broad claims falls into conflict with our obligation to avoid constitutional issues when possible and to decide cases on the narrowest ground possible. *See In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003) (courts decide constitutional questions only when the issue cannot be resolved on non-constitutional grounds); *Sweatt v. Painter*, 339 U.S. 629, 631 (1950) ("We have frequently reiterated that this Court will decide constitutional questions only when necessary to the disposition of the case at hand, and that such decisions will be drawn as narrowly as possible."). Courts construe statutes to avoid constitutional infirmities, if such a construction is possible. *See Stockton v. Offenbach*, 336 S.W.3d 610, 618 (Tex. 2011); *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 169 (Tex. 2004). We would do the same even for statutory construction. In *Arcadia, Ohio v. Ohio Power Co.*, for instance, the Court resolved a statutory construction issue on an antecedent question that "neither the parties, the interested agencies, nor the Court of Appeals considered[.]" *Arcadia, Ohio v. Ohio Power Co.*, 498 U.S. 73, 86 (1990) (Stevens J. concurring); *see also Kamen v. Kemper Fin. Services, Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."). Whether by design or inadvertence, the parties here focus on the broadest arguments possible. But I still note, in particular, the question originally raised by the City's petition, asks whether the Governor had the authority to override Dr. Ocarranza's order as a local, public health official. I simply provide the answer I would reach to the question framed by the City, doing so by reading the text of the statutory provisions cited in their briefing, and without venturing into broader questions that wholly appear unnecessary. *See* TEX. R. APP. P. 47.1. (providing that courts of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal).

3

*Analysis*

First, in framing the dispute, the majority starts with the Texas Disaster Act but ends with a discussion of the authority of home-rule cities to issue local health ordinances. But I view the issue more narrowly as this case involves a health authority order by Dr. Ocaranza, not a city ordinance or proclamation from the mayor. As provided by the plain text of the Texas Health & Safety Code, the grant of power and authority of a local health authority when issuing a health directive, as Dr. Ocaranza issued here, is such that the local authority acts as a state official operating within a local jurisdiction. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 121.024(a) ("A health authority is a state officer when performing duties prescribed by state law."), (b)(2) ("A health authority shall perform each duty that is . . . prescribed by the department."), and (c)(2) ("The duties of a health authority include . . . aiding the department in . . . disease prevention and suppression . . . in the health authority's jurisdiction[.]"); *see also id*. § 11.001 ("'Department' means the Department of State Health Services."); *id*. § 121.021 (providing that a health authority is a physician appointed under the provisions of Chapter 121 of the Health & Safety Code to administer state and local laws relating to public health within the appointing body's jurisdiction). As such, Dr. Ocaranza is obliged to perform his duties as "prescribed by the department," and as "prescribed by state law." *See id.* § 121.024(a), (b)(2). Indeed, during the hearing below, Dr. Orcaranza readily acknowledged he must follow state law in performing his public health duties.

Whatever the ultimate reach of the Governor's authority under the Disaster Act, the text of the scheme places the Governor as the "commander in chief of state agencies, boards, and commissions having emergency responsibilities." *See* TEX. GOV'T CODE ANN. § 418.015(c). This provision includes the department of state health services, a state agency having emergency

4

responsibilities among its other duties. In this context, Governor Abbott acts not solely as governor but in the legislatively assigned role of leading the State's response to a declared, statewide disaster. *See id*. While serving in this role, his authority is constrained by the terms of the Disaster Act, which particularly includes that "[t]he legislature by law may terminate a state of disaster at any time." *See id.* § 418.014(c). As a member of the state health department, Dr. Ocaranza also serves as a state officer involved in the state's disaster response. *See* TEX. HEALTH & SAFETY CODE ANN. § 121.024 (a), (b)(2).

As applied to this record, I would conclude the City cannot show a probable right to the relief sought by its request for a temporary injunction. Dr. Ocaranza is duty bound to follow directives of the health department of the state, not act independently and contrary from prescribed responsibilities. I would secondly conclude the City cannot show the Governor acted ultra vires in prohibiting Dr. Ocaranza from issuing an inconsistent order which compels mask coverings in nearly all indoor settings and subjects residents to the imposition of a $500 fine for each violation. Whether the Governor can prohibit a local governmental unit from issuing such a mask mandate is not an issue that should be addressed here as it is not factually presented by this case.

Second, to the extent the majority relies on recent decisions of our sister courts of appeals to reach its holding, I disagree with the majority's characterization of these cases as being persuasive in this context. The majority recites that our sister courts of appeals recently determined the Governor acted outside his scope of authority when he issued GA-38, given the order contradicted orders of various governmental units and officials. *See Abbott v. City of San Antonio*, 648 S.W.3d 498, 503 (Tex. App.—San Antonio 2021, pet. granted) (involving a suit by a city and county jointly challenging GA-38's prohibition on face covering mandates); *Abbott v. Jenkins*, No. 05-21-00733-CV, 2021 WL 5445813, at *3 (Tex. App.—Dallas Nov. 22, 2021, pet. granted)

(mem. op.) (county judge disaster order); *Abbott v. Harris County*, 641 S.W.3d 514, 519 (Tex. App.—Austin 2022, pet. granted) (involving a county judge order pertaining to wearing of face coverings in county buildings and a local health authority order recommending universal masking in schools and licensed childcare centers); *Abbott v. La Joya Indep. Sch. Dist.*, No. 03-21-00428-CV, 2022 WL 802751, at *1 (Tex. App.—Austin Mar. 17, 2022, pet. filed) (mem. op.) (involving face-covering requirements adopted by a group of independent school districts and other related parties); *Abbott v. County of Fort Bend*, No. 01-21-00453-CV, 2022 WL 7180371, at *1 (Tex. App.—Houston [1st Dist.] Oct. 13, 2022, pet. filed) (mem. op.) (involving a county issued mask mandate). But when focus is placed on the parties involved and the orders at issue, it becomes clear the cases are factually distinguishable from the case at hand.

All cited cases involve orders issued or sought not by a local health authority alone, but rather, by politically accountable governmental actors or units. For example, local governmental units sought a mask order in *County of Fort Bend*, either a county judge or commissioner's court, or both, were involved in *Jenkins* and *Harris County*, both a city and county governmental unit sought orders in *City of San Antonio*, and a host of school districts joined in *La Joya Independent School District. See County of Fort Bend*, 2022 WL 7180371, at *2; *Jenkins*, 2021 WL 5445813 at *2-*3; *Harris County*, 641 S.W.3d at 519; *City of San Antonio*, 648 S.W.3d at 503; *La Joya Indep. Sch. Dist.*, 2022 WL 802751, at *2. The only case which arguably overlaps with the facts of this case is *Harris County*, to the extent it involves an order by a local health authority. *See Harris County*, 641 S.W.3d at 519. But even still, the local health authority merely required, with certain exceptions, that schools and licensed childcare centers follow recommendations for universal masking by the "Centers for Disease Control and Prevention (CDC)," and required "students, staff, teachers, and visitors to wear face coverings in school buildings and on school

6

buses." *Id*. At minimum, the involvement of these governmental units and elected officials in the issuing of those orders ensured public representation, input, and accountability.

Beyond factual differences, I also contend that some caution should be shown about the precedential value of these cases to the issue framed by this case. Although some similarities exist in that each contend with disaster orders, these cases are largely different in regard to the officials taking contradictory actions and the nature and scope of the orders issued. Petitions for review have been filed with the Supreme Court of Texas in all the cases cited by the majority, and to date, petitions have been granted in at least three. On those petitions, the Supreme Court is hearing oral argument even as we work to finalize this decision, and a decision from the Court will soon clarify many aspects of this dispute. That decision alone will likely have controlling authority over decisions of this Court to the extent distinctions are not plausible or arguable in good faith. Because a decision will be rendered fairly soon, and it will operate with controlling force, I am far less confident than the majority in ascribing such heavy weight to the decisions of our sister courts of appeals. As much as I cannot predict what will be learned from our higher court's decision, I prefer we follow our prior precedent in *State v. El Paso County*, 618 S.W.3d 812 (Tex. App.—El Paso 2020, no pet), to the extent it provides some guidance (though not entirely) to this dispute. I would not so easily set it aside at this juncture. Unlike the majority, I conclude our sister court cases are distinguishable and not fully supportive of overruling this Court's prior precedent.

Because the temporary injunction order before us is limited to invalidating a provision of the Governor's Executive Order only as it applies to Dr. Ocaranza's contrary order, I would conclude we need not express any opinion on whether the City of El Paso, as a home-rule city, could itself issue an ordinance mandating a mask mandate. *See* TEX. R. APP. P. 47.1. Because

7

Dr. Ocaranza is a state officer not a local elected official or entity, I would conclude the trial court abused its discretion in issuing the temporary injunction at issue here.


GINA M. PALAFOX, Justice

February 28, 2023

Before Rodriguez, C.J., Palafox, J., and Ferguson, Judge
Ferguson, Judge (Sitting by Assignment)